**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**

v.

**SHELDON GRANT, Defendant**

Criminal No. 83/87

District Court of the Virgin Islands

Div. of St. Croix

May 31, 1984

---

GEORGE CANNON, JR., ESQ., Christiansted, St. Croix, *for plaintiff*

LOLITA D'JONES, ESQ., Christiansted, St. Croix, *for defendant*

O'BRIEN, *Judge*

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on cross appeals from the Territorial Court of the Virgin Islands. Sheldon Grant (hereafter "Grant") was convicted after jury trial below of Assault in the Third Degree in violation of 14 V.I.C. § 297(2) and Possession of a Dangerous Weapon During the Commission of a Crime of Violence in violation of 14 V.I.C. § 2251(a)(2)(B). After sentencing took place on July 1, 1983, both Grant and the Government of the Virgin Islands (hereafter "Government") filed appeals with this Court. The United States of America was granted leave to enter this appeal in an amicus curiae capacity and, along with Grant and the Government, submitted briefs and appeared before this Court for oral argument on April 18, 1984. For the reasons which follow we will affirm the convictions below, but remand this matter to the Territorial Court for resentencing as to Count II of the Information, the Possession of a Dangerous Weapon charge.

### 1. Appeal of Grant

Grant urges reversal of his conviction asserting that 1) the Government was guilty of misconduct in the selective manner in which it investigated and ultimately prosecuted the charges against him, 2) that the verdict of the jury was contrary to the weight of the evidence, and that the trial court erred in: 3) admitting and excluding certain evidence and testimony, 4) in failing to enter a judgment of acquittal, and 5) in giving prejudicial instructions to the jury.

After the trial below, Grant filed a Fed. R. Crim. P. 29 Motion for Judgment of Acquittal, or in the Alternative, for a New Trial pursuant to Fed. R. Crim. P. 33. As grounds for that motion, Grant raised all the issues raised here except for the prosecutorial misconduct and prejudicial jury instruction claims. Those issues which were presented to the trial court were addressed and disposed of in a thorough July 20, 1983, opinion denying Grant's motion in whole.

■ In addressing the issue of whether there was sufficient evidence to support the jury verdict of guilty and whether the trial court's denial of the motion for judgment of acquittal was correct, this Court must determine whether there was substantial evidence viewed in a light most favorable to the Government, to uphold the decision of the jury. See, United States v. Caniel, 689 F.2d 31 (3d Cir. 1982); United States v. Palmeri, 630 F.2d 192 (3d Cir. 1980), cert. denied, 450 U.S. 967 (1981). In making this determination this

24

Court does not weigh the evidence or consider the credibility of witnesses, and will draw all inferences in favor of sustaining the verdict; United States v. Dickens, 695 F.2d 765 (3d Cir. 1982), cert. denied, 460 U.S. 1092, 103 S.Ct. 1792 (1983); United States v. McClain, 469 F.2d 68 (3d Cir. 1972); see United States v. Friedland, 660 F.2d 919 (3d Cir. 1981), cert. denied, 456 U.S. 989 (1982). Substantial evidence such as is required to sustain a jury verdict is evidence that is adequate and sufficient to permit reasonable persons to find defendant's guilt beyond a reasonable doubt. See, e.g., United States v. Nicoll, 664 F.2d 1308 (5th Cir.), cert. denied, 457 U.S. 1118 (1982); United States v. Bass, 490 F.2d 846 (5th Cir. 1974); United States v. Barfield, 447 F.2d 85 (5th Cir. 1971).

██ The trial court's standard of review on a Fed. R. Crim. P. 33 motion for a new trial is much broader than that on a motion for judgment of acquittal. Government of the Virgin Islands v. Leycock, 93 F.R.D. 569 (D.V.I. 1982); United States v. Pepe, 209 F.Supp. 592 (D. Del. 1962), aff'd, 339 F.2d 264 (3d Cir. 1964) (per curiam). On a motion for a new trial the court weighs the evidence and the credibility of witnesses. Id. Then only if the evidence preponderates heavily against the verdict, will the court, in an exercise of discretion, order a new trial. See, id.

██ After a comprehensive review of the evidence presented at trial, the court below determined that the evidence in the record, together with the reasonable inferences which could be drawn therefrom was sufficient to send the case to the jury and to sustain the verdict of guilty. We adopt that court's perspective and affirm as to the sufficiency of the evidence issues.

This Court will also affirm the trial court's ruling with regard to the remaining issues raised below: the admission into evidence of the weapon used and the limitation on the manner in which Grant could introduce the fact that he had no criminal record.

██ Grant argues that the admission of the butcher knife so inflamed the jury as to unduly prejudice his defense.[1] In determining whether to admit relevant evidence or exclude same because its "probative value is substantially outweighed by the danger of unfair prejudice", a trial court has broad discretion. Fed. R. Evid. 403; United States v. Clifford, 704 F.2d 86 (3d Cir. 1983); see Hamling v. United States, 418 U.S. 87, 124–125 (1974). The trial court's rulings

---

[1] Counsel for Grant did not object at trial to the introduction of the knife. We will address the issue only because it was addressed by the trial court.

under Rule 403 are rarely disturbed on appeal absent a clear showing that the judge abused his discretion. Clifford, supra; United States v. Long, 574 F.2d 761 (3d Cir.), cert. denied, 439 U.S. 985 (1978). As Grant has not convinced this Court that the trial court in any way abused his discretion, we will affirm that court's ruling allowing the weapon into evidence.

This Court also affirms the trial court's ruling on Grant's attempt to introduce character evidence of his general lawfulness. At the two day trial below, the Government put on various witnesses including the victim, the treating physician, several eyewitnesses and three police officers. Mid-afternoon of the first day of trial, counsel for Grant approached the bench to inquire whether Grant's only character witness could be released for the day, as it appeared that his testimony would not be heard until the following morning. The trial judge questioned the prosecutor regarding the duration of the Government's case-in-chief, determined the witness would not be needed and allowed the witness to be excused. The next morning, Grant's character witness was not able to appear for trial.

The only witness available to be called by the defense was Grant himself. During the defendant's testimony, counsel attempted to establish Grant's good character through Grant by asking him whether or not he had ever been arrested and charged with a crime before this incident. The Government objected on the grounds of relevance. At sidebar, counsel for Grant revealed that the purpose of her line of questioning was to establish that Grant had never been convicted of a crime, and thus, to establish his character as a law-abiding citizen.

The trial judge then granted the Government's objection on the grounds that: a witness/defendant may not establish his own good character but must do so by bringing in third party character testimony. After trial, while ruling on Grant's Motion for Judgment of Acquittal, or In the Alternative, for a New Trial, the trial court affirmed its ruling on Grant's character testimony holding that: 1) Grant himself could not give testimony as to whether or not he had ever been arrested as such evidence could only come in through third parties, further 2) such testimony was irrelevant in the context of this case as character was not a substantive issue, and finally 3) that while evidence that Grant had never been convicted of a crime may be relevant, such testimony could only come in through the opinion of a third person. Because no evidence of good character was admitted at trial, the trial judge refused to give the requisite character evidence instruction in his charge to the jury.

The question we face here is whether a defendant/witness may establish his character trait as being a "law-abiding citizen" through his own testimony that he has never been either arrested or convicted of a crime. We hold that he may not, and that the trial court did not err in excluding Grant's testimony.

■ It is not disputed that evidence proffered by Grant to show his character as a law-abiding person is admissible. See, e.g., United States v. Angelini, 678 F.2d 380 (1st Cir. 1982); United States v. Hewitt, 634 F.2d 277 (5th Cir. 1981) and cases cited therein. Such evidence would tend to show that it is less likely that the defendant would knowingly break the law. See, Angelini, supra; see generally 1A Wigmore, Evidence § 55 (Tillers rev. 1983).

■■ What is disputed is simply the manner in which the admittedly relevant testimony may be introduced. It is, quite simply, the rule in this jurisdiction that the nature of evidence admissible as going to proof of a character trait is limited by Fed. R. Evid. 405(a) to opinion and reputation testimony. Government of the Virgin Islands v. Carino, 631 F.2d 226 (3d Cir. 1980); Government of the Virgin Islands v. Roldan, 612 F.2d 775 (3d Cir. 1979), cert. denied, 446 U.S. 920 (1980); Government of the Virgin Islands v. Petersen, 553 F.2d 324 (3d Cir. 1977). It would be ludicrous to allow a defendant/witness to place his character in issue by ipse dixit testimony as to his opinion of his own character or his reputation in the community. Grant's testimony would subject his credibility to possible impeachment, but it would not suffice as evidence of good character. United States v. Thomas, 676 F.2d 531 (11th Cir. 1982); see Michelson v. United States, 335 U.S. 469 (1948); United States v. Walker, 313 F.2d 236 (6th Cir.), cert. denied, 374 U.S. 807 (1963).

■ What remains of Grant's appeal are the prosecutorial misconduct and erroneous jury instruction issues. As it appears that these alleged errors were not objected to nor otherwise brought to the attention of the trial court below, this Court may only consider them if they rise to the level of plain error. United States v. Hykel, 461 F.2d 721 (3d Cir. 1972); United States v. Todaro, 448 F.2d 64 (3d Cir.), cert. denied, 404 U.S. 1040, reh. denied, 405 U.S. 948 (1971). As Grant has not shown this Court that, should these matters indeed be error, either is egregious or otherwise constitutes a manifest miscarriage of justice, this Court will not address these errors raised for the first time on appeal. See United States v. Dalfonso, 707 F.2d 757 (3d Cir. 1983); United States v. Nobel, 696 F.2d 231 (3d Cir. 1982), cert. denied, 462 U.S. 1119, 103 S.Ct. 3086 (1983).

■

## 2. The Appeal of the Government

At sentencing in this matter the trial court sentenced Grant to a 2 1/2 year suspended sentence on the assault charge, and to 2 1/2 years imprisonment on the possession of a dangerous weapon charge, which Grant was to serve only on weekends from 6:00 p.m. Friday evenings to 6:00 a.m. Monday mornings during the term's duration.

Grant was convicted of carrying the knife under 14 V.I.C. § 2251 (a)(2) which allows that anyone:

> (2) with intent to use the same unlawfully against another, has, possesses, bears, transports, carries or has under his proximate control, a dagger, dirk, dangerous knife, razor, stiletto, or any other dangerous or deadly weapon shall—
>
> . . .
>
> (B) if he has previously been convicted of a felony, or has, possesses, bears, transports, carries or has under his proximate control, any such weapon during the commission or attempted commission of a crime of violence (as defined in section 2253(d)(1) hereof) shall be fined not more than $2,000 or imprisoned not more than five (5) years, or both, which penalty shall be in addition to the penalty provided for the commission of, or attempt to commit, the crime of violence.[2]

14 V.I.C. § 2251(a)(2)(B) (as amended 1974).

Should one convicted of carrying or using a dangerous weapon under section 2251 actually use the weapon during the commission of a crime of violence, he

> shall be incarcerated for a term of imprisonment of not less than one-half of the maximum sentence specified in the particular section. Imposition or execution of this minimum period of incarceration shall not be suspended, nor shall probation be granted; neither shall parole or any other form of release be granted for this minimum period of incarceration.

14 V.I.C. § 2254 (as amended 1974).

The Government appeals arguing that the "only on weekends" feature of Grant's sentence on the weapon count is outside the realm of the trial court's discretion and, as imposed, the sentence clearly violates the "mandatory minimum" aspect of the statute. We agree.

---

[2] 14 V.I.C. § 2253(d)(1) adopts the definition of crime of violence found in 23 V.I.C. § 451(e). Assault with a dangerous weapon and assault to do great bodily harm are crimes of violence under section 451(e).

Generally, an appellate court will not review the sentence imposed by a trial court so long as the sentence falls within the bounds prescribed by statute. United States v. Tucker, 404 U.S. 443 (1972); United States v. Hasbrouk, 449 F.2d 1303 (3d Cir. 1971). The trial court's judgment is not completely immune, however, but will be interfered with only upon a showing of illegality or abuse of discretion. United States v. Ligori, 658 F.2d 130 (3d Cir. 1981); United States v. Brown, 382 F.2d 52 (3d Cir. 1967). It is for the legislature to fix the limits of punishment. Ruiz v. United States, 365 F.2d 500 (3d Cir. 1966), appeal after remand, 382 F.2d 1019, cert. denied, 390 U.S. 998 (1968); see United States v. Mazzei, 521 F.2d 639 (3d Cir.), cert. denied, 423 U.S. 1014 (1975); and it is, absent constitutional infirmities, those sentences imposed which do not conform to the applicable legislative mandate which are unlawful. Hazelwood v. United States, 508 F.2d 78 (5th Cir. 1975).

As prescribed by section 2254, Grant was sentenced to a term of 2 1/2 years—not less than one half the 5 year maximum sentence specified in section 2251. See 14 V.I.C. §§ 2251 and 2254, supra. The Government argues that it is the subsequent decree of section 2254 which has been contravened, specifically that which specifies that execution of defendant's incarceration shall "not be suspended, nor shall probation be granted; neither shall parole or any other form of release be granted for this minimum period of incarceration." Id. § 2254.

In interpreting section 2254 and determining whether Grant's sentence was imposed in accordance therewith, this Court's role is to ascertain the meaning the legislature attached to the words employed, and to carry its intentions into effect. See, e.g., Vermiluz-Brown Co. v. Connell, 335 U.S. 377 (1948); see generally 73 Am.Jur. 2d Statutes § 145 (1974).

"The starting point of every case involving the construction of a statute is the language itself", Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 756 (1975) (Powell, J. concurring), and the words of a statute should be interpreted when possible in their ordinary and everyday sense. Old Colony Railroad v. Commissioner, 284 U.S. 552 (1932).

When a defendant is sentenced under section 2254, the statute provides that probation shall not be granted nor shall parole "or *any other form of release* be granted for this minimum period of incarceration." 14 V.I.C. § 2254 (emphasis added). Grant argues that his being allowed to remain unincarcerated from 6:00 a.m. Monday to

29

6:00 p.m. the following Friday is not a "release" within the meaning of the statute. This Court does not agree. Webster defines release as "the act of liberating or freeing, (a) discharge from restraint." Webster's Third New International Dictionary, p. 1917 (1966). Black, referring to "release on own recognizance" defines the term, in pertinent part, as one "having control over his person, permits him to be at liberty. . . ." Black's Law Dictionary, p. 1160 (rev. 5th ed. 1979). These "ordinary and everyday" meanings are consistent with the Government's contention that Grant is indeed being "released" while he is discharged from incarceration for 4 1/2 days during the week.

While not completely illuminating, the legislative history of the statutes at issue does give this Court some guidance. During debate on the bill on May 2, 1974, concern was expressed that if the purpose of the legislation was to attack "serious crimes", an individual convicted of mere possession of a dangerous weapon should not be denied the opportunity of probation. The misgiving was alleviated, however, when it was revealed that the terms "during the commission or attempted commission of a crime of violence" had been inadvertently dropped from the final draft of the bill. After discussion that the mandatory minimum requirement was only to apply as limited by those missing terms, the words were reinserted into the bill without objection, and the bill was passed. See excerpts, May 2, 1974, session of Legislature of the Virgin Islands. The negative implication of this discussion is that the legislature intended the "without release" terminology to come into play whenever anyone uses a dangerous weapon while committing a crime of violence.

As a penal statute, section 2254 is subject to strict construction. United States v. Giles, 300 U.S. 41, reh. denied, 300 U.S. 687 (1973); United States v. Resnick, 299 U.S. 207 (1937). That is to say the statute should be interpreted strictly against the Government, and liberally in favor of the defendant. E.g., Donnelly v. United States, 276 U.S. 505 (1928). But this rule of statutory construction cannot provide a substitute for common sense and legislative history. United States v. Standard Oil Co., 384 U.S. 224 (1966); see Fasulo v. United States, 272 U.S. 620 (1926).

In light of all the foregoing, this Court views the sentence of the trial court to be outside the limits set by the legislature. In decreeing that one convicted under section 2251 shall not be allowed any form of release, the legislature did not intend that Grant spend nearly two thirds of his prison term at liberty. The act was aimed at

deterring behavior such as Grant's, and requires that he serve his term without benefit of intermittent releases.

The matter is not totally put to rest, however. Grant does not solely argue that the sentence as imposed was within the parameters of section 2254, but also that the statute itself is unconstitutional as violative of the Eighth Amendment. Grant submits that the mandatory minimum sentence is cruel and unusual as: 1) the punishment is an inappropriate sentence for the particular offense, as well as, 2) disproportionate as applied to him personally.

■ The first prong of Grant's attack is based on the settled principle that the Eighth Amendment requires a criminal sentence be proportionate to the crime for which the defendant has been convicted. See, e.g., Pulley v. Harris, 465 U.S. 37, 104 S.Ct. 871 (1984); Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001 (1983). While the principle has been typically used to hold capital punishment excessive in certain circumstances, the Supreme Court has explicitly applied proportionality analysis to prison sentences. Compare Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368 (1982) (death penalty) and Coker v. Georgia, 433 U.S. 584 (1977) (death penalty) with Weems v. United States, 217 U.S. 349 (1910) (hard labor, chains and permanent civil disabilities) and Solem v. Helm, supra (life without parole). While the proportionality principle is, thus, applicable to sentences of imprisonment, the Supreme Court "has never found a sentence for a term of years within the limits authorized by statute to be, by itself, cruel and unusual punishment." Hutto v. Davis, 454 U.S. 370, 372 (1982) (quoting Davis v. Davis, 585 F.2d 1226, 1229 (4th Cir. 1978)).

■ In Rummel v. Estelle, 445 U.S. 263 (1980), the Court was reviewing the sentence of a man convicted of obtaining $120.75 by false pretenses, who was serving life imprisonment under the Texas habitual offender statute for having been convicted of his third felony. Rummel, too, was arguing that his sentence was so disproportionate as to contravene the Eighth Amendment. The Court there distinguished in two ways capital punishment from sentences of imprisonment which differ from one another only in terms of duration. The Court, through Justice Rehnquist, stated that, first, Eighth Amendment judgments should not be nor appear to be the products of subjective views of the individual Justices and, second, that the comparison of one prison term with another could not be done in other than a subjective manner. Consequently, the Court strongly concluded, that "one could argue without fear of contradiction by

31

any decision of this Court that for crimes concededly classified or classifiable as felonies . . . the length of the sentence actually imposed is purely a matter of legislative prerogative." Hutto v. Davis, 454 U.S. 370, 373 (1982) (quoting Rummel, supra at 275). The Court responded to Justice Powell's suggestion, in dissent, that under Rummel the Court could not review a life sentence imposed for over-time parking by stating that in such an extreme circumstance, tra-ditional proportionality analysis would indeed come into play. Rummel, supra, at 274, n. 11. Grant was sentenced for assault aris-ing out of an incident which, but for divine intervention, could have resulted in the loss of a human life. We do not see the 2 1/2 year mandatory sentence as being so "extreme" in relation to the crime as to require proportionality review.

▪ Alternatively, Grant seeks another type of proportionality review. Assuming that the mandatory minimum sentence is not dis-proportionate to the crime in the traditional sense, see Pulley, supra; Grant urges that the punishment is disproportionate as to him par-ticularly as section 2254 disallows consideration of his individual characteristics, sentencing needs, and any mitigating factors. Con-sequently, he continues, the sentence is so arbitrary and capricious that it violates the due process clause of the Fifth and Fourteenth Amendments. Grant cites this Court to the line of cases in which the Supreme Court dealt with comparative proportionality in capital punishment cases. E.g., Jurek v. Texas, 428 U.S. 262 (1976); Proffitt v. Florida, 428 U.S. 242 (1976); Gregg v. Georgia, 428 U.S. 153 (1976); Furman v. Georgia, 408 U.S. 238 (1972). These cases are inapplicable here, however, as they aim at a system defect which allows arbitrariness in sentencing due to unfettered discretion in juries and trial judges, see, Furman, supra; and statutes designed to correct same. See Jurek, Proffitt, and Gregg, supra. The mandatory minimum sentence cannot be disproportionate as "subjective and unpredictable" under the Furman line of authority as every offender sentenced under section 2254 must receive, at least, 2 1/2 years. See 14 V.I.C. § 2254.

▪▪ In Woodson v. North Carolina, 428 U.S. 280 (1976), the Supreme Court struck down the mandatory death penalty provision of North Carolina's first degree murder statute which was, also, enacted to combat arbitrary application. After discussing the bene-fits of individualized sentencing, the Court reiterated that its rul-ings in Woodson and companion cases involving mandatory death sentences are based on the "predicate that the penalty of death is

32

qualitatively different from a sentence of imprisonment . . . [and] [b]ecause of that qualitative difference, there is a corresponding difference in the need for the determination that death is the appropriate sentence in a specific case." Id. at 305. Where a statute does not mete out capital punishment, the Court indicates that mandatory sentences are not constitutionally infirm.[3] This Court finds Grant's contention that the imposition of the 2 1/2 year mandatory minimum sentence violates his due process protection unpersuasive.

■ Grant makes another argument collateral to this. He alleges that the mandatory minimum sentence is a legislative invasion into judicial discretion which violates our tripartite system of government as set up by the Constitution. He cites no authority for this assertion, and we do not adopt it.

> One could hardly contend that the Legislative branch is confined to the mere defining of acts constituting crimes, or even their degrees as misdemeanors or felonies, leaving thereafter to the Judiciary the determination of the nature, kind and extent of the punishment. Subject only to fundamental constitutional protections akin to cruel and unusual punishment or concepts of due process . . . it is entirely proper that the Legislature determine what constitutes the crime and its degrees and what punishment shall be meted out by a court after the judicial ascertainment of guilt. In the wisdom of the Legislature this may at times be a minimum-maximum fine or imprisonment, or both. In others, as here, it may be mandatorily fixed and specific.

Smith v. United States, 284 F.2d 789, 791 (5th Cir. 1960); see Mazzei, supra; Ruiz, supra; see also Hutto, supra.

■ What we have in this case is not a legislative intrusion into judicial discretion. It is precisely the opposite, i.e., judicial intrusion into an area reserved to the legislature. Members of the judiciary who are not satisfied with the wisdom expressed by the legislature in a sentencing statute are not free to substitute their own views in rendering a sentence under that statute.

In that courts should be reluctant to review legislative decrees of appropriate criminal sentences, Rummel supra; and successful challenges to criminal sentences on the grounds of proportionality

---

[3] In Warden v. Marrero, 417 U.S. 653 (1974), the Court implicitly upheld mandatory minimum prison terms by affirming denial of parole to one serving under such a sentence. See state court decisions upholding mandatory minimum prison sentences cited in 100 A.L.R.3d 431.

should be "exceedingly rare", id. at 272; and for the reasons set forth, this Court does not view section 2254 as constituting cruel and unusual punishment or violating the due process clause. In view of the above this Court will vacate Grant's sentence for possession of a dangerous weapon during the commission of a crime of violence, in violation of 14 V.I.C. § 2251, and remand Count II of the information for appropriate resentencing under 14 V.I.C. § 2254.

## ORDER

THE COURT having filed its Memorandum Opinion of even date herewith, and the premises considered, now therefore it is

ORDERED:

THAT the sentence of Defendant Sheldon Grant as to Count II of the Information, Possession of a Dangerous Weapon During the Commission of a Crime of Violence, be and the same hereby is VACATED; and

THAT this matter be and the same hereby is REMANDED for resentencing as to Count II of the Information consistent with the foregoing; and

THAT, as to each issue addressed in Defendant Grant's appeal, the rulings of the Trial Court be and the same hereby are AFFIRMED.

