**Warrington MARSHAM, Appellant,**

**v.**

**GOVERNMENT OF THE VIRGIN ISLANDS, Appellee.**

**No. CRIM.APP.1999–173.**

District Court, Virgin Islands,
Appellate Division,
D. St. Thomas and St. John.

June 13, 2001.

Vincent A. Fuller, St. Thomas, VI, for Appellant.

Maureen Phelan Cormier, Assistant Attorney General, St. Thomas, VI, for Appellee.

Before: RAYMOND L. FINCH, Chief Judge of the District Court of the Virgin Islands; THOMAS K. MOORE, Judge of the District Court of the Virgin Islands; and MARIA M. CABRET, Presiding Judge of the Territorial Court of the Virgin Islands, Division of St. Croix, Sitting by Designation.

## OPINION OF THE COURT

PER CURIAM.

Appellant Warrington Marsham ["Marsham" or "appellant"] appeals his twenty-seven-year sentence and order of restitution upon his conviction by plea of guilty to three counts of grand larceny. Finding that the sentencing judge did not abuse his discretion and did not violate Marsham's Fifth or Eighth Amendment rights, we will affirm Marsham's prison sentence. We will vacate the order of restitution, however, since restitution may not be ordered in the Virgin Islands without first placing a defendant on probation.

### I. FACTUAL AND LEGAL BACKGROUND

Between July 12 and September 8, 1996, Marsham went on a burglary spree. First, on July 12th, he recruited his friend Henry Williams ["Williams"] and broke

into Caribbean Healthways with an acetylene torch and tank in hand. Finding the safe too thick to cut, however, the two burglars went to the home of a skilled mechanic, Samuel Leader ["Leader"], woke him, and brought him back to Caribbean Healthways to cut open the safe. The three made off with close to $5,000 in cash.

A couple of weeks later, Marsham cut the alarm wires and broke into a WAPA business office, but again found himself in need of assistance. He left the office and once more recruited Leader, who came and again, using an acetylene torch, cut open one of two safes on the premises, only to find it empty. In need of further assistance to move the second, larger safe, Marsham left to recruit Williams and Delwin Baker ["Baker"] to help move the second safe, which they eventually opened and from which they took $750.

About two weeks later, Marsham cut the alarm wires to Runway Grocery store, and he and Leader climbed onto the roof, cut a hole in the roof, and entered the store while Williams stood watch. Although Marsham had brought his torch, it was ineffective against the concrete reinforced safe inside. The burglars came away with roughly $3,000 in quarters and about $1,000 worth of phone cards. This was Williams' last venture with Marsham.

Five days later, Marsham and Leader broke into Quality Foods, while a new recruit, Thomas Somersall ["Somersall"], stood watch. Marsham and Leader torched the safe and hauled away about $16,000 and several guns, one of which Marsham sold to Baker. A few days later, Marsham and Leader hit Antilles Automotive, now Caribbean Auto Mart, where the two made off with more than $2,000. At AA Supplies, a couple of weeks later, Marsham and Leader cut the wrong wires and set off the alarm as they tried to enter

the building. Police chased but did not catch the two burglars. This did not deter Marsham and Leader from trying again two days later, when the two smashed through a concrete wall at Western Auto, torched the safe, and made off with about $17,000.

On September 18, 1996, law enforcement officials caught up with Marsham in connection with the gun sale to Baker, which ultimately connected Marsham to the Quality Foods burglary. Authorities charged him with seven counts of third degree burglary, six counts of grand larceny, one count of petty larceny, and one count of attempted burglary. Leader, Williams, and Somersall were also arrested and all of them entered guilty pleas, while Marsham opted to stand trial. Two days into the trial, on March 2, 1999, after hearing the testimony of Leader and Williams, Marsham decided to plead guilty. Counsel informed the court that the two parties had agreed upon a plea. Marsham would plead guilty to two counts of grand larceny, each carrying a maximum ten-year sentence, and pay $5,725 in restitution, and the government would recommend concurrent five-year sentences on the two counts and would not invoke the habitual offender statute with its mandatory ten-year to life sentence. The court rejected the plea and chastised Marsham for waiting until the second day of trial to accept an offer that had been pending for more than four months. The trial continued.

The next morning, counsel informed the court that a new plea agreement had been reached, which was essentially the same agreement as the previous one, except that the government would remain silent on the issue of punishment. In response, Territorial Court Judge Ive A. Swan stated "the only thing I need to know is how many years we are talking about." (J.A. at 12.)

Counsel explained that the maximum could be as many as twenty years for the two ten-year offenses. Judge Swan replied that he would "not [be] receptive to anything less than 15 years," and that after hearing the evidence, he thought that "this is going to be a 20–year sentence." (*Id.* at 14.) Moments later, he informed Marsham that, after thinking it over, he would only accept a plea agreement that gave the court the option of sentencing Marsham to as many as thirty years. (*See id.*) After discussing the matter with his attorney, Marsham pleaded guilty to three counts of grand larceny. The court confirmed with Marsham's counsel that Marsham understood that he faced a maximum thirty-year sentence. (*See id.* at 19.) The judge reiterated "as long as he understands that it could go from anywhere from one day to 30 years, then as long as he understand that and he understands that under the plea he will face a couple of years in jail . . . ." (*see id.* at 21–22) and then accepted the plea.

On April 21, 1999, the court held a sentencing hearing, at which the government noted Marsham's prior felony, but pursuant to the plea agreement, refrained from invoking his habitual offender status to increase the sentence. (*See id.* at 44.) Before Marsham's allocution, his attorney confirmed that Marsham understood "that he could receive ten plus ten plus ten." (*Id.* at 55–56.) Marsham then read his allocution, apologizing to the court and proclaiming himself a different man from the one who committed the crimes. (*See id.* at 59–63.) Afterwards, the judge responded, calling Marsham cunning and manipulative, and asserting his belief that the apology was disingenuous and a further example of his manipulative tendencies. (*See id.* at 64–75.) The judge then sentenced Marsham to twenty-seven years imprisonment, comprised of two consecutive ten-year sentences for each of two counts of grand larceny, and a consecutive seven-year sentence for the third count of grand larceny. The court also ordered $13,583.33 in restitution.

Leader, Marsham's chief accomplice, who participated in the same crimes and had pleaded guilty to two counts of grand larceny, was sentenced to two concurrent terms of five years each, with two years suspended and credit for time served, with the remainder also to run concurrently with a criminal sentence imposed in Georgia for other crimes. Williams was sentenced to two years, with credit for time served, and the remainder suspended. Somersall also received two years, credit for time served, and one year suspended.

Marsham filed a timely notice of appeal on April 26, 1999.

## II. DISCUSSION

On appeal, Marsham argues that (1) the Territorial Court abused its discretion and violated his Fifth Amendment right to Due Process when, as punishment for asserting his right to a trial, the court sentenced him to twenty-seven years on three counts of grand larceny; (2) the court violated his Eighth Amendment right against cruel and unusual punishment; and (3) the court's restitution order violated title 5, section 3711 of the Virgin Island Code, because restitution may only be ordered of a convict on probation.

### A. Jurisdiction and Standard of Review

■■■■ This Court has jurisdiction to review final judgments and orders of the Territorial Court in all criminal cases, except generally where defendant was convicted by guilty plea. *See* 4 V.I.C. § 33. We must, however, entertain an appeal from a sentence imposed upon a guilty plea which raises a colorable violation of an appellant's constitutional or federal statu-

tory rights. *See, e.g., Chick v. Government of the Virgin Islands*, 941 F.Supp. 49, 50–51 (D.V.I.1996); *Karpouzis v. Government of the Virgin Islands*, 41 V.I. 179, 182, 58 F.Supp.2d 635, 637–38 (D.V.I. 1999).[1] Our review of constitutional claims and claims involving statutory construction is plenary. *See Parrott v. Government of the Virgin Islands*, 56 F.Supp.2d 593, 594 (D.V.I.1999) (statutory construction); *Nibbs v. Roberts*, 31 V.I. 196, 204, 1995 WL 78295 (D.V.I.1995) (constitutional claims). In general, the severity of a sentence is not subject to review so long as it falls within the statutory limits. *See Chick, supra.* The standard for reviewing a sentence is abuse of discretion. *See Government of the Virgin Islands v. Grant*, 21 V.I. 20, 1984 U.S. Dist. LEXIS 16265 (D.V.I.App.Div.1984).

## B. The Harsh Sentence Imposed Was Not an Abuse of Discretion and Did Not Violate Appellant's Due Process Rights under the Fifth Amendment.

■ Appellant argues that he was "punished," in effect, singled out for special treatment by the Territorial Court for asserting his Fifth Amendment due process right to a trial.[2] The government counters that a trial court has virtually unfettered discretion in imposing a sentence within statutory guidelines. Because the record before us fails to support Marsham's assertion that the sentencing judge sought to punish him for opting to stand trial rather than pleading as his co-defendants did, we will affirm his sentence.

■ The point of departure for our analysis is the general rule that "[a] sentence that falls within statutory limits is presumptively valid and will not be reversed absent a showing of improper procedure or abuse of discretion." *Government of the Virgin Islands v. Martinez*, 1999 WL 1273717, 1999 U.S. Dist. LEXIS 20045 (D.V.I.App.Div.1999). In *Walker v. Government of the Virgin Islands*, we focused on the exception to the rule, noting that the rule of "virtually unfettered discretion" in imposing statutory sentences "relies on the presumption that no procedural defects affected the fairness of the sentence imposed." 124 F.Supp.2d 933, 937 (D.V.I.2000) (vacating sentence). "The defendant has a legitimate interest in the character of the procedure which leads to the imposition of sentence even if he may have no right to object to a particular result of the sentencing process." *Id.* (quoting *Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977)). "[T]he sentencing process is not wholly immune from judicial review. The punishment must fit the convict as well as the crime." *Karpouzis*, 41 V.I. at 183, 58 F.Supp.2d at 639 (citing *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949) and *Townsend v. Burke*, 334 U.S. 736, 741, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948)). Thus a fair sentencing process requires the trial judge to individualize the sentence by considering all mitigating and

---

1. *See* Revised Organic Act of 1954 § 23A; 48 U.S.C. § 1613a. The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541–1645 (1995 & Supp.2000), *reprinted in* V.I. CODE ANN. 73–177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp.2000) (preceding V.I. CODE ANN. tit. 1) ["REV. ORG. ACT"]; *see also Monsanto–Swan v. Government of the Virgin Islands*, 33 V.I. 138, 141, 918 F.Supp. 872, 874 (D.V.I.1996) ("Section 23A(a) of the Re-

vised Organic Act, provides that 'the [Virgin Islands] legislature may not preclude the review of any judgment or order which involves the Constitution, treaties, or laws of the United States ....' 48 U.S.C. § 1613a(a).").

2. The Fifth Amendment of the Constitution is made applicable to the Virgin Islands by REV. ORG. ACT § 3, 48 U.S.C. § 1561.

aggravating circumstances, *see Chick*, 941 F.Supp. at 51, but not "over-individualize" it to the point of "singl[ing] out [a defendant] for special treatment," *Karpouzis*, 41 V.I. at 184, 58 F.Supp.2d at 639.

In *Walker*, we found that the trial judge impermissibly used the threat of a high sentence to coerce a plea out of one of two co-defendants and then followed through on his threat to punish the non-pleading defendant. *See* 124 F.Supp.2d at 937. In *Karpouzis*, we found that the trial judge's "excessive bail and violations of local sentencing provisions create[d] the distinct suggestion that bias and prejudice played a role in the sentencing." *See* 41 V.I. at 185–86, 58 F.Supp.2d at 639–40. The facts of this case, unlike those of *Walker* and *Karpouzis*, simply do not support Marsham's claim that he was punished or singled out for special treatment. The judge did not try to coerce a plea by promising a lower sentence or by threatening a higher sentence for failure to plead. Rather he clearly advised Marsham that, if he pleaded guilty to three ten-year counts, he would face a maximum sentence of thirty years total, (*see* J.A. at 19), and that "as a minimum, this is going to be a 20–year sentence," (*id.* at 13–14).[3] Although Marsham understood throughout the trial and during the plea process what possible sentence he was facing, he did not plead guilty until after his two co-defendants testified against him. The record simply does not support the claim that the judge tried to coerce a plea or punish appellant's initial refusal to plead guilty.

Further, the trial judge painstakingly stated his reasons for the severity of the sentence he imposed, consistent with the requirement that he individualize the sentence. In this case, the aggravating circumstances permeated the individualization process. The judge noted that Marsham was a repeat offender with a criminal history, and he was the ringleader of the crime spree who initiated the crimes and recruited others as assistants. (*See* J.A. at 65–72 (Sentencing Hr'g, Apr. 21, 1999).) The record shows that the trial judge, based on appellant's criminal history and record of recidivism and on his central role in each of the crimes, did not believe Marsham's allocution and considered him "cunning and conniving." (*See id.* at 64.) The judge further had the benefit of the evidence on the record obtained during two days of trial and recounted Marsham's litany of crimes and manipulations before pronouncing sentence. (*See id.* at 64–77.) Accordingly, the facts of this case provide no support for Marsham's claim that the trial judge abused his discretion in imposing a sentence within the statutory range.

## C. Marsham's Sentence Does Not Violate the Eighth Amendment.

■ Appellant next argues that the sentence imposed offends the Eighth Amendment of the Constitution because it is disproportionate to the other sentences received by his co-defendants and disproportionate in light of the nature of his

---

**3.** Marsham raised the issue that he was misled by the trial judge's comment that Marsham was facing "a couple of years in jail." (J.A. at 21–22) Taken in the context of the totality of the trial judge's statements, we are convinced that Marsham understood that he was facing a likely sentence between twenty and thirty years. In addition to the judge's numerous references to the maximum time

Marsham could receive, his refusal to accept Marsham's first guilty plea on only two counts carrying a maximum total sentence of twenty years made clear the trial judge's intentions. Further, Marsham's attorney stated to the court at sentencing that Marsham understood he was possibly facing "ten plus ten plus ten."

crimes.[4] The government contends that the sentence is not only within the statutory maximum, but it also survives current Eight Amendment analysis. We agree with the government that, given the circumstances of Marsham's extensive criminal activity, his sentence does not violate the Eighth Amendment prohibition against cruel and unusual punishment.

The "Eighth Amendment does not require strict proportionality between the crime and the sentence, but rather forbids only extreme sentences that are grossly disproportionate to the crime." *See Harmelin v. Michigan*, 501 U.S. 957, 959, 111 S.Ct. 2680, 115 L.Ed.2d 836, (1991) (allowing to stand a sentence of life imprisonment without possibility of parole for possession of over 650 grams of cocaine). In this appeal, the sentence imposed is within statutory limits, and the record reflects the kinds of aggravating circumstances that support judicial discretion in favor of a severe penalty. Marsham's sentence of twenty-seven years is less than the thirty years available for three counts of grand larceny. The aggravating circumstances, which the trial judge noted in the sentencing colloquy, include the facts that Marsham, who was a repeat offender, masterminded and recruited henchmen for the three grand larcenies and a string of other crimes, causing extensive loss and property damage to the victims. Further, as noted above, the judge did not believe his apology. Given Marsham's lead role in organizing and executing each offense and the destruction and loss caused thereby, we find nothing unusual about the trial court judge's imposition of sentences close to the maximum of ten years for each count.

Marsham could have faced life imprisonment as an habitual offender under 14 V.I.C. § 61(a). Yet Marsham was allowed to plead guilty in the middle of trial to only three of the fifteen counts against him, and he was not charged as an habitual offender. This significantly reduced his maximum possible sentence from life imprisonment to thirty years, with possibility of parole after he serves nine years. *See* 5 V.I.C. § 4601 (parole eligibility after one-third of sentence served).

Finally, Marsham has submitted no evidence that his sentence is grossly disproportionate to sentences imposed on other criminals in this jurisdiction. The lesser sentences meted out to his cooperating co-defendants surely do not qualify, since the record demonstrates that their roles were as followers, not leaders, of Marsham's criminal enterprise, and that, once in custody, they cooperated with the government, whereas Marsham did not. Further, Marsham made no effort to show that his sentence was grossly disproportionate to sentences received in other jurisdictions. The government, however, cited several cases where other courts handed down heavy sentences upon single-count burglary convictions.[5] Appellant has simply failed to carry his burden of demonstrating that his sentence violated the Eighth Amendment. His sentence will be affirmed.

---

4. "Excessive bail should not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. The Eighth Amendment of the Constitution is made applicable to the Virgin Islands by REV. ORG. ACT § 3, 48 U.S.C. § 1561.

5. *See, e.g., People v. Goodwin*, 59 Cal.App.4th 1084, 69 Cal.Rptr.2d 576 (Cal.App.1998) (twenty-five years to life for one count of commercial burglary where record showed unrelenting pattern of criminal conduct); *Craner v. State*, 778 S.W.2d 144 (Tex.App. 1989) (thirty years for one count of burglary where defendant had one prior conviction).

## D. The Order of Restitution Will Be Vacated.

Finally, Marsham asserts that the trial court ordered him to pay restitution without first placing him on probation, in violation of 5 V.I.C. § 3711(a).[6] *See Karpouzis,* 41 V.I. at 185, 58 F.Supp.2d at 639 (restitution to be paid only during probation). The government alleges that we incorrectly decided in *Karpouzis* that restitution may be ordered only if a defendant is placed on probation. The government relies on 5 V.I.C. § 4606, which states:

> Whenever the Territorial Parole Board shall order the parole of an inmate, the Board, unless it finds compelling circumstances which would render a plan of restitution unworkable, shall order as a condition of parole that the parolee make restitution to the victim for the damage or loss caused by the parolee's crime, in an amount and manner specified in the Journal entry of the court that sentenced the inmate.

*Id.* Although the Virgin Islands Code contains no definition of a "Journal entry," nor is it a term in local custom or usage, the government would have us rely on the similar language of a Kansas statute directed to its parole board.[7] The government argues that "the term 'journal entry' appears to be used synonymously with the term 'judgment form' " in Kansas, and therefore must be similarly equated here

in the Virgin Islands. This highly creative argument falls of its own weight, however, since in Kansas also, "restitution may only be ordered in conjunction with probation or suspended sentence." *State v. Chilcote,* 7 Kan.App.2d 685, 690, 647 P.2d 1349, 1354 (1982). The government's creativity would be better addressed to the Legislature to restructure and modernize our sentencing provisions.

■ We reiterate and reaffirm that, under Virgin Islands law as presently codified, restitution may not be ordered unless the court sentences a defendant to straight probation or to no more than six months imprisonment followed by a period of probation. *See* 5 V.I.C. §§ 3711(a) (restricting eligibility for probation after conviction to defendants incarcerated for six months or less) and 3721 ("The court, by order, may withhold sentence or impose sentence and stay its execution, and in either case place the person on probation .... If the court places the person on probation, the court shall require restitution designed to compensate the victim's pecuniary loss resulting from the crime."); *Karpouzis,* 41 V.I. at 185, 58 F.Supp.2d at 639. The order of restitution will be vacated.

## III. CONCLUSION

Marsham's twenty-seven-year sentence on three counts of grand larceny did not

---

**6.** Title 5, section 3711 of the Virgin Islands Code provides for "Suspension of sentence and probation." Subsection (a) states specifically:

> While on probation and among the conditions thereof, the defendant—
>
> .   .   .   .   .
>
> May be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had ....

**7.** Kansas law provides:

> If the court which sentenced an inmate specified at the time of sentencing the amount and the recipient of any restitution ordered as a condition of parole or postrelease supervision, the Kansas parole board shall order as a condition of parole or postrelease supervision that the inmate pay restitution in the amount and manner provided in the journal entry unless the board finds compelling circumstances which would render a plan of restitution unworkable.

KAN. CRIM. PROC. CODE ANN. § 22–3717(n) (1999).

amount to an abuse of discretion, because it fell within the statutory guidelines and did not constitute punishment for his decision to stand trial under the Fifth Amendment. Rather, the record shows that the sentence fell towards the high end of the allowable range because Marsham had a criminal record and had masterminded all of the crimes and recruited its participants, and because the judge did not believe Marsham was truly sorry for his crimes. Further, the sentence was not cruel and unusual under the Eighth Amendment, because Marsham failed to show it was grossly disproportionate in light of the crime spree he perpetrated or in comparison to sentences for similar crimes and similar circumstances in other jurisdictions.

The order of restitution, however, is impermissible under Virgin Islands law, and must be vacated.[8]

8. Our decision today is not an appealable "final decision." *See* In re *Alison*, 837 F.2d 619 (3d Cir.1988) (no appellate jurisdiction to review order remanding for further proceedings, as order was not a "final decision").