## CHARLES NIBBS, Individually, and as a Government Employee, Appellant
## v.
## DEBRA ROBERTS, Appellee

D. Ct. App. Civ. No. 1991-029

District Court of the Virgin Islands

Div. of St. Croix

February 8, 1995

MICHAEL A. JOSEPH, ESQ., Christiansted, St. Croix, U.S.V.I., *for Appellant*

YVETTE D. ROSS, ESQ., (LAW OFFICES OF GEORGE W. CANNON, JR.), Frederiksted, St. Croix, U.S.V.I., *for Appellee*

MOORE, *Chief Judge*, District Court of the Virgin Islands; WATSON, *Judge* of the United States Court of International Trade, Southern District of New York, Sitting by Designation; and MEYERS, *Judge* of the Territorial Court of the Virgin Islands, Division of St. Thomas and St. John, Sitting by Designation.

On Appeal from the
Territorial Court of the Virgin Islands

### OPINION OF THE COURT

This is an appeal from a final judgment of the Territorial Court in an action brought pursuant to the federal civil rights statute, 42

U.S.C. § 1983 (1988), the Virgin Islands Tort Claims Act, V.I. CODE ANN. tit. 33, §§ 3401-16 (1994) ("VITCA"), and the common law.

## I. FACTS AND PROCEDURAL HISTORY

This appeal arose out of events occurring on July 26, 1989, which led to the arrest of Debra Roberts ("appellee" or "Roberts") by Charles Nibbs, a Virgin Islands Police Officer ("appellant" or "Nibbs"). The facts leading to Roberts' arrest, though at points disputed, are not complex, and may be stated simply. Appellee, a 1989 graduate of Central High School, St. Croix, was employed by the Virgin Islands Department of Education as a summer school counselor at Central High School Annex. On July 26, 1989, between 12:00 noon and 1:00 p.m., she was waiting inside the Annex's gate to be picked up by her mother. A fight erupted nearby, drawing a large crowd; Roberts was not involved in the fight. The police were called, and appellant, the officer responding to the call, attempted to disperse the crowd. According to Nibbs, he gave a command over the loud speaker of his squad car for "everyone" to wait across the street. Appellee admitted she heard the command, started to move away from the gate and toward the school, because that was where she normally waited for her mother and she didn't believe the command was directed to her since she was not part of the crowd or fight. Nibbs, on observing Roberts ignoring his instructions, ran to her and grabbed her arm. Appellee claimed that as her arm was grabbed roughly she instinctively jerked it away, knocking appellants' hat off in the process. Nibbs then pushed Roberts towards his squad car, "slamming" her head against the vehicle and striking her with his hands and club. Appellee stated that even though she became very cooperative after appellant's assault, she was nonetheless handcuffed, "shoved" into the back of Nibbs' squad car, taken to the stationhouse, and placed in a cell. Appellee testified that on the way to the police station, appellant told her "to shut up or he would shut her up." The record shows that she was taken before a judge to be advised of her rights within an hour and promptly released.

Upon her release, appellee went to the emergency room at St. Croix Hospital, where pain killers were prescribed and she was

200

referred to the surgical clinic. She did not go to the clinic, but went to see her private physician three days later. Appellee sustained several injuries to her body, including bruised ribs, a swollen neck, a scar on her arm, and an injury to her back which was described as "a little out of place." The criminal charges filed against Roberts were dismissed.

## A. *The Claims or Pleadings*

On January 25, 1990, appellee brought an action in the Territorial Court against appellant and the Government of the Virgin Islands ("Government") for damages. The complaint stated claims against Officer Nibbs personally, acting in his individual capacity, for the common law torts of assault and battery, false arrest and intentional infliction of emotional distress ("Common Law Claims"), and, by the use of excessive force, for deprivation of her civil rights under 42 U.S.C. § 1983 ("1983 Claim"). Pursuant to the theory of respondeat superior, the Common Law Claims were also brought against the Government under the VITCA by naming Nibbs in his official capacity as a police officer acting within the scope of his employment ("VITCA Claims").

Appellant filed an answer generally denying the specific allegations of the complaint, but not raising the affirmative defense of qualified immunity. See Appendix ("App.") at 9b.

## B. *Proceedings before the Trial Court*

The case was tried on March 18 and 19, 1991, with a jury determining the liability of Nibbs, in his individual capacity, for the 1983 Claim of excessive force and the Common Law Claims of assault and battery, false arrest and intentional infliction of emotional distress. The VITCA Claims against the Government of the Virgin Islands and Officer Nibbs in his official capacity were tried to the bench.[1] At the close of appellee's case below, both counsel for the Government and for appellant moved for directed verdicts under Fed. R. Civ. P. 50. The court denied Nibbs' motion for a

---

[1] See 33 V.I.C. § 3413 ("the trials of actions instituted in accordance with the provisions of section 3408 shall be by the court sitting without a jury.").

directed verdict on the individual liability claims, and thus allowed the case to go to the jury on the 1983 Claims and on the Common Law Claims against Nibbs, individually.

On March 20, 1991, the jury returned a verdict finding appellant liable on all counts and assessing damages of $20,000 compensatory, $10,000 punitive and $5,000 "nominal" damages.[2] On the same day, the trial judge dismissed the vicarious liability claims tried to the court against the Government on the grounds that Officer Nibbs could not have acted in his "individual capacity," as was found by the jury, and at the same time be found to have acted

---

[2] Reproduced below is the Verdict returned by the jury:

JURY VERDICT FORM
> We, the jury impanelled (sic) and sworn to determine the issues in this case, do render the following verdict:

1. With respect to the claim that the defendant violated the civil rights of plaintiff Debra Roberts, we find the defendant Charles E. Nibbs, acting in his individual capacity,

X Liable
_____ Not liable

2. With respect to the claim of assault and battery, we find the defendant Charles E. Nibbs, acting in his individual capacity,

X Liable
_____ Not liable

3. With respect to the claim of false arrest, we find the defendant Charles E. Nibbs, acting in his individual capacity,

X Liable
_____ Not liable

4. With respect to the claim of intentional or reckless infliction of emotional distress, we find the defendant Charles E. Nibbs, acting in his individual capacity,

X Liable
_____ Not liable

If you find the defendant "not liable" in questions 1 through 4, do not answer question 5; just sign and date the jury form. If you have checked "liable" in answer to any of the questions 1 through 4, proceed and answer question 5:

5. We assess the following damages as the amounts that will reasonably compensate the plaintiff:

| | |
|---|---|
| 20,000.00 | Compensatory Damages |
| 10,000.00 | Punitive Damages |
| 5,000.00 | Nominal Damages |

Signed this 20 day of March, 1991, at Kingshill, St. Croix, Virgin Islands.

in his "official capacity" to make the Government liable. Thus, in the view of the trial judge, the sole question for the court as fact finder on the VITCA Claims was "whether the officer acted in his individual capacity or in his official capacity. If he acted in his official capacity, then the government is liable. If he acted in his individual capacity, then the government is not liable." App. at 12a. The trial judge then ruled that he was constrained to dismiss the claims brought pursuant to VITCA against Officer Nibbs and the Government of the Virgin Islands, even though he "would have found liability, and . . . would have awarded damages irrespective of the capacity question." Id. at 15a. On September 24, 1991, the court entered an order of judgment, adopting its oral renderings from the bench without any elaboration.

## II. OVERVIEW OF ISSUES ON APPEAL

Officer Nibbs raises numerous challenges to the jury's verdict and the trial court's findings and conclusions of law. Primarily, Nibbs contends that he could not be liable in his individual capacity: first, because the Government asserted that appellant was acting in his official capacity and joined in his motion for a directed verdict, and second, because he did not act in so outrageous and excessively violent a manner as to make him liable in his individual capacity, rather than in his official capacity. Appellant's last argument along this line is that the trial court committed reversible error in its instructions to the jury on the standard for a civil rights violation under section 1983.

Secondarily, appellant challenges the sufficiency of the evidence for the jury's verdict. He contends that the record does not support an award of punitive damages, nor does it support the jury's finding of intentional and/or reckless infliction of emotional distress. Finally, Nibbs argues that the trial court abused its discretion in two respects: one, by admitting into evidence an order dismissing the criminal charges against appellee; and two, by admitting evidence of a jury verdict against another police officer who was a key witness for appellant.

We disagree with Nibbs on all issues raised. In particular, we find that appellant misapprehends the law when he contends that he may not be held liable in his individual capacity under 42 U.S.C.

§ 1983. We also find that the trial court erred harmlessly in appellant's favor in instructing the jury on the legal requirement for an excessive force claim under section 1983. We further find that both appellant and the trial judge were incorrect in their understanding of the distinction between an official-capacity suit and an individual-capacity suit under section 1983, and based on this misapprehension of the law, the trial court committed plain error when it dismissed the official-capacity claims brought against appellant and the Government pursuant to VITCA. We therefore remand with instructions.

### III. JURISDICTION AND STANDARD OF REVIEW

■ We have appellate jurisdiction pursuant to V.I. Code Ann. tit. 4, § 33. The trial court's decision concerning the application of a legal precept is subject to plenary review. See Government of the Virgin Islands v. Etienne, 28 V.I. 121, 127, 810 F. Supp. 659, 662 (D.V.I. APP. 1992); Ross v. Bricker, 26 V.I. 314, 318, 770 F. Supp. 1038, 1042 (D.V.I. APP. 1991). The trial court's findings of fact are reviewed under a clearly erroneous standard. 4 V.I.C. § 33; Christian v. Joseph, 23 V.I. 193, 198 (D.V.I. APP. 1987); Ascencio v. Ramirez, 20 V.I. 508, 513 (D.V.I. APP. 1984). Appellate courts will not disturb factual findings unless "the determination [of the trial court] is either (1) completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data." Stridiron v. I.C., Inc., 20 V.I. 459, 462-63, 578 F. Supp. 997, 999 (D.V.I. APP. 1984) (quoting Krasnov v. Dinan, 465 F.2d 1298 (3d Cir. 1972)); see also Louis v. U.S. Home Communities Corp., 12 V.I. 320, 322 (D.V.I. APP. 1975).

### IV. APPLICABLE LAW AND RELEVANT PRECEDENT

A. *Territorial Government Is Subject To Suit under* VITCA

■ The fundamental principle of sovereign immunity requires that there be waiver or consent before an action may be brought against a state or territory. Where tortious conduct by a government official is alleged, an action against the employee in his

official capacity to recover monetary damages from the treasury of the Territory is barred unless the Virgin Islands Legislature has consented to such suit by waiving its absolute immunity from suit. The enactment of the Virgin Islands Tort Claims Act has waived, *under specified limited conditions*, the sovereign immunity granted by Congress to the Government of the Virgin Islands under section 2(b) of the Revised Organic Act.[3] Section 3408 of title 33, Virgin Islands Code, provides:

> (a) Subject to the provisions of section 3416 of this chapter, the Government of the Virgin Islands waives its immunity from liability and action and hereby assumes liability with respect to injury or loss of property or personal injury or death caused by the *negligent or wrongful act or omission* of an employee of the Government of the Virgin Islands *while acting within the scope of his office or employment*, under circumstances where the Government of the Virgin Islands, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. The Government consents to have the liability determined in accordance with the same rule of law as applied to actions in the courts of the Virgin Islands against individuals or corporations, provided that the claimant complies with the provisions of this chapter. (b) The provisions of subsection (a) of this section shall not apply if the injury or loss of property is caused by the *gross negligence* of an employee of the Virgin Islands while acting within the scope of his office or employment. (emphasis added.)

■ Therefore, a plaintiff may maintain a claim against the Government of the Virgin Islands, as well as against the responsible actor in her official capacity, only to the extent of this limited waiver of immunity. The government's waiver of immunity is further limited to recovery by the injured party of no more than $25,000.00 under 33 V.I.C. § 3411 (c). Thus, for claims against the

---

[3] The Revised Organic Act of 1954 § 2(b), 48 U.S.C § 1541(b) (1976 & 1986 Supp.), reprinted in V.I. Code Ann., Historical Documents, 61 (1967 and 1994 Supp.) ("Revised Organic Act").

Government and the officer acting in his official capacity, the award on a finding of liability is limited to $25,000.

## B. *Territorial Government is Not Subject To Suit under Section 1983*

■ Our starting point is Ngiraingas v. Sanchez, 495 U.S. 182, 109 L. Ed. 2d 163, 110 S. Ct. 1737 (1990), where the Supreme Court held that neither a territory nor its officers acting in their official capacities are "persons" under section 1983 in an action for damages or other noninjunctive, retrospective relief. Id. at 192. The Court reasoned that "the confluence of § 1983's language, its purpose, and its successive enactments, together with the fact that Congress has defined 'person' to exclude Territories, [makes it] clear that Congress did not intend to include Territories as persons who would be liable under § 1983." Id. As the Supreme Court had noted a year earlier, "the language of § 1983 falls far short" of expressing a "clear and manifest" intent by Congress to "pre-empt the historic powers of the States" and subject them to liability to which they had not been subjected before. Will v. Michigan Department of State Police, 491 U.S. 58, 64, 105 L. Ed. 2d 45, 109 S. Ct. 2304 (1989).[4] In Will, the Supreme Court held that neither a state nor state officials sued in their official capacities for money damages are "persons" under section 1983. Thus, the Court's conclusion in Ngiraingas that a territory is not a "person" under section 1983 is fully consistent with its precedent that a state is also not such a "person."

## C. *Officials, Employees, and Agents of Territory are Subject To Individual Liability*

How, then, does a plaintiff bring a 1983 suit seeking damages for actions of a Territorial official taken under color of Territorial law?

---

[4]The doctrine of sovereign immunity as embodied in the Eleventh Amendment was significant to the majority in Will, since that was a 1983 action brought in state court. The Court noted that the Eleventh Amendment bars such suits unless the State has waived immunity, or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.... Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity and so to alter the federal-state balance in that respect .... Will v. Michigan Department of State Police, 491 U.S. 58, 66, 105 L. Ed. 2d 45, 109 S. Ct. 2304 (1989) (citations omitted).

Is the Territorial actor to be named in his official capacity or his individual capacity? If suable in his individual or personal capacity, is he also subject to individual and personal liability for damages? The Supreme Court has recently provided answers to these questions by clarifying the distinction between an individual-capacity action and an official-capacity suit under section 1983. See Hafer v. Melo, 502 U.S. 21, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991).

### 1. *Individual-Capacity Actions Under Section 1983*

Petitioner Hafer argued that "she may not be held personally liable under § 1983 for discharging respondents because she 'acted' in her official capacity as Auditor General of Pennsylvania." Id. at 362. In rejecting this argument, the Court repeated the distinctions made in Kentucky v. Graham[5] between personal- and official-capacity actions and reiterated the Court's previous rulings that neither a state, nor a territory, "nor its officials acting in their official capacities are 'persons' under § 1983." Hafer, 112 U.S. at 362.

█ Also rejected was Hafer's contention that section 1983 liability turns on the capacity in which a state official acted when injuring the plaintiff, with this clarification:

> [T]he phrase "acting in their official capacities" is best understood as a reference to the capacity in which the state officer is sued, *not* the capacity in which the officer inflicts the alleged injury....
> . . . State officers sued for damages in their official capacity are not "persons" for purposes of the suit because they

---

[5] 473 U.S. 159 (1985). The Graham Court, utilizing "concrete examples of the practical and doctrinal differences between personal- and official-capacity actions," explained this distinction thusly:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of [territorial] law. Official-capacity suits, in contrast, *"generally represent only another way of pleading an action against an entity of which an officer is an agent."* As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity.

*Id.* at 165-66 (citations omitted) (first emphasis added).

assume the identity of the government that employs them. By contrast, officers sued in their personal capacity come to court as individuals. A government official in the role of personal-capacity defendant thus fits comfortably within the statutory term "person."

Hafer, 112 S. Ct. at 362 (citation omitted) (emphasis added). Thus, an employee of the Territory who inflicts injury while acting in his official capacity may only be sued under section 1983 in his "individual capacity."

While "imposing personal liability on ... officers may hamper their performance of public duties," the reality nevertheless is that

Congress sought "to give a remedy to parties deprived of constitutional rights, privileges and immunities by an official's abuse of his position." Accordingly, it authorized suits to redress deprivations of civil rights by persons acting "under color of any [Territorial] statute, ordinance, regulation, custom or usage." *The requirement of action under color of [Territorial] law means that [an official] may be liable [to the plaintiff] precisely because of her authority as [an official of the Territory]. . . .* This same official authority [cannot serve to] insulate[] [the defendant] from suit.

Hafer, 112 S. Ct. at 364, 363 (citations omitted) (emphasis added). The Court went on to note that "such concerns are properly addressed within the framework of . . . personal immunity jurisprudence." *Id.* at 364-65.[6]

2. *Fourth Amendment Excessive Force Actions*

█ The Supreme Court has ruled that "all claims that law enforcement officers have used excessive force — deadly or not — in the course of an arrest, investigatory stop or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment

---

[6]The Government of the Virgin Islands must in certain cases pay the amount of an individual judgment against its employees up to $100,000. 33 V.I.C. § 3414 (a). This section of the VITCA requires (1) that the employee must have been sued in a civil action authorized by the statutes of the United States and arising out of his employment with the government and (2) a finding by the court that she acted reasonably and within the scope of her employment.

208

'reasonableness' standard, rather than under a 'substantive due process' approach." Graham v. Connor, 490 U.S. 386, 395, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989). "The 'reasonableness' of a particular seizure depends not only on when it is made, but also on how it is carried out." *Id*. Thus,

> [d]etermining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of "'the nature and quality of the intrusion on the individual's Fourth Amendment interests'" against the countervailing governmental interests at stake. Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. Because "the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Id*. 490 U.S. at 396 (citations omitted).

■ Accordingly, if the police officer employs more force than that necessary to effect the arrest, the "seizure" is rendered "unreasonable," and the officer is exposed to individual liability in his personal capacity under section 1983. However, "the 'reasonableness' of the particular use of force must be judged from the perspective of a reasonable officer on the scene. ..." *Id*. The Court emphasized that "the question is 'whether the totality of the circumstances justifies a particular sort of ... seizure.'" *Id*. (citing Tennessee v. Garner, 471 U.S. 1, 8-9, 85 L. Ed. 2d 1, 105 S. Ct. 1694 (1985)).

> [T]he "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officer['s] actions are "objectively reasonable" in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation. An officer's evil intentions will not make a Fourth

Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

Graham, 490 U.S. at 397 (citations omitted).

### 3. *Common Law Tort Actions*

■ We note, in addition, what is plain from the Supreme Court decisions, namely, that a claim under section 1983 does not foreclose common law claims arising out of the same conduct. Indeed, the Court has remarked that

> [s]ection 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. Remedy for the latter type of injury must be sought in state court under traditional tort-law principles. Just as "[m]edical malpractice does not become a constitutional violation [of the Federal Constitution's prohibitions of cruel and unusual punishment] merely because the victim is a prisoner," false imprisonment does not become a violation of the Fourteenth Amendment merely because the defendant is a state official.

Baker v. McCollan, 443 U.S. 137, 146, 61 L. Ed. 2d 433, 99 S. Ct. 2689 (1979) (citation omitted).

■ Even though section 1983 provides a species of tort liability, and a claim thereunder is referred to as stating a constitutional tort, the federal remedy provided by section 1983 does not supplant remedies provided by Virgin Islands statutes or by the common law. Accordingly, a personal-capacity claim under section 1983 may be maintained against a Territorial employee, simultaneously with and independently of any other claims allowed under the law of the forum. It further follows that claims under the common law may lie against Territorial actors in their individual capacities.

### D. *Defense of Qualified Immunity Is Available to Officials, Employees, and Agents of the Territory Sued Individually Under Section 1983 and the Common Law*

■ Under the common law and the Supreme Court's section 1983 decisions, government officials sued in their individual ca-

pacities are entitled to the defense of qualified immunity, an affirmative defense which must be expressly raised by the defendant. *Gomez v. Toledo,* 446 U.S. 635, 640, 64 L. Ed. 2d 572, 100 S. Ct. 1920 (1980).[7] The outlines of the defense of qualified immunity have evolved over the last several years.[8] In a case involving high federal officials,[9] the Supreme Court attempted to make the defense more amenable to summary determination by eliminating any "subjective element" since an official's subjective good faith routinely had come to be treated as a question of fact for a jury to decide. *Harlow v. Fitzgerald,* 457 U.S. 800, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982). The Court there concluded that

> bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery. We therefore hold that government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their *conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.*

*Id.* at 817-18 (emphasis added).

---

[7] Although appellant never expressly raised the defense of qualified immunity in his answer to the complaint, we nevertheless discuss generally the parameters of the defense since the trial court instructed the jury on qualified immunity.

[8] By extending to government employees the defense of qualified immunity, our common law jurisprudence, as well as the federal law, recognizes the need to minimize the "fear of personal monetary liability and harassing litigation [which may] unduly inhibit officials in the discharge of their duties." *Anderson v. Creighton,* 483 U.S. 635, 638, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1986). The doctrine of "'qualified immunity' strikes a balance between compensating those who have been injured by official conduct and protecting government's ability to perform its traditional functions." *Wyatt v. Cole,* 118 L. Ed. 2d 504, 112 S. Ct. 1827, 1833 (1992) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 819, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982)). Indeed, "'qualified immunity' protects all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant,* 111 S. Ct. 543, 537 (1991) (quoting *Malley v. Briggs,* 475 U.S 335, 343, 89 L. Ed. 2d 271, 106 S. Ct. 1092 (1986)).

[9] The Supreme Court has accorded "absolute immunity" to a very few high government officials, namely, the President of the United States, legislators carrying out their legislative functions, and judges carrying out their judicial functions. The "Court always has recognized, ... that official immunity comes at great cost. An injured party with an otherwise meritorious tort claim is denied compensation simply because he had the misfortune to be injured by a [government] official." *Westfall v. Erwin,* 484 U.S. 292, 295, 98 L. Ed. 2d 619, 108 S. Ct. 580 (1988).

211

■ This qualified immunity defense has been extended to government actors performing less discretionary functions, including law enforcement officers sued for violating the reasonableness standards of the Fourth Amendment in making arrests and executing searches. The officer may interpose the affirmative defense of qualified immunity to avoid individual liability for damages by countering that his conduct conformed to what "a reasonable officer could have believed to be lawful, in light of clearly established law and the information the ... officer[] possessed. [His] subjective beliefs about [his actions] are irrelevant." Anderson v. Creighton, 483 U.S 635, 641, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1987).[10] Thus, where a police officer is alleged to have violated "clearly established law" in making a warrantless search, the

> determination whether it was *objectively legally reasonable* to conclude that a given search was supported by probable cause or exigent circumstances will often require examination of the information possessed by the searching official[]. But . . . this does not reintroduce into qualified immunity analysis the inquiry into [the official's] subjective intent that Harlow sought to minimize.

*Id.* (emphasis added). Even a police officer who "'reasonably but mistakenly conclude[s] that probable cause [to arrest] is present'" is entitled to assert the defense. Hunter v. Bryant, 502 U.S. 224, 112 S. Ct. 534, 536, 116 L. Ed. 2d 589 (1991) (quoting Anderson v. Creighton, 483 U.S. at 641).

## V. DISCUSSION

The principles outlined above govern the issues raised on appeal which we now address.

---

[10] The Supreme Court recently has re-emphasized that the net result of "the entitlement is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526, 86 L. Ed. 2d 411, 105 S. Ct. 2806 (1985), quoted in Hunter v. Bryant, 112 S. Ct. at 536. Whether turning on issues of law, see, e.g., Mitchell, 472 U.S. at 526, or on material questions of fact over which there is no genuine issue, see, e.g., id.; Bryant, 112 S. Ct. at 537, the Supreme Court repeatedly has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Id.*

## A. *Appellant's Individual Liability Under Section 1983*

We first dispose of appellant's primary argument that he was not individually liable to appellee because the Government conceded that he was acting in his official capacity.

### 1. *Liability "Under Color of Law"*

■ When a government actor is sued in his or her individual capacity under section 1983, it must be determined whether the claimed unlawful act was done under color of Territorial law, that is, by one who carries "a badge of authority" and represents the Territory in some capacity, regardless of whether he acts in accordance with his authority or misuses it. See Hafer, 112 S. Ct. at 363. Thus, the Government's concession here that Nibbs was "acting in his official capacity," meaning with lawful or official authority, does not "insulate" him from suit. Indeed, that he discharged his duties under color of Virgin Islands law is an essential requirement for an action to be cognizable against appellant individually under section 1983. *Id.*

■ For a personal liability claim to lie under section 1983, "it is enough to show that the official, acting under color of law, caused the deprivation of a federal right." Kentucky v. Graham, 473 U.S. at 166. The facts of the case before us clearly establish a "nexus" between the "government and the challenged action," a determination necessary to satisfy the "under color of law requirement" of a section 1983 action. See Melo v. Hafer, 912 F.2d 628, 636 n.8 (3d Cir. 1990). Here, Roberts has alleged that Officer Nibbs, while clothed with the authority of law, deprived her of her Fourth Amendment civil rights by using excessive force in arresting her.

■ Because individual liability under section 1983 may be imposed irrespective of whether the officer acted within the bounds of his lawful authority, the trial judge correctly rejected the contention that the Government's concession that appellant acted within his official capacity was dispositive of the claim against Nibbs in his individual capacity.

### 2. *Federally Protected Right*

■ Once the question of action under color of law is resolved, the federally protected constitutional or statutory right at issue must be identified. Hafer, 112 S. Ct. at 363. Appellee's

213

complaint alleged that appellant used excessive force in the process of arresting her. Such a claim pleads a violation of appellee's clearly established constitutional Fourth Amendment rights against unreasonable seizure.[11] The teaching of the Supreme Court in such a case is that the "seizure" is rendered "unreasonable" if the officer uses more force than is necessary to effect the arrest, and the officer accordingly is exposed to individual liability in his personal capacity under section 1983. "The 'reasonableness' inquiry in an excessive force case is an objective one; the question is whether the officer['s] actions are 'objectively reasonable' in light of the facts and circumstances confronting [him] ...." Graham, 490 U.S. at 397. "Proper application" of this reasonableness standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

■ The factual circumstances of this case began with a fight which erupted around the school compound, drawing a crowd. Appellant thereafter arrived on the scene and issued a command over the loud-speaker of his squad car for "everyone to move to one side of the road." Roberts contends that she was never part of the crowd, did not view herself as being subject to the command, and began moving away from the crowd towards an area of the school compound where she normally waited to be picked up by her parent. Here, the seriousness of the crime is not a factor, since appellee had committed no crime, but only failed to respond specifically to the officer's general command to the crowd. Neither is the risk of flight by the subject a consideration; indeed, Roberts was retreating towards the school compound, away from the fight scene, just not where directed by Nibbs. Although there is conflicting evidence whether Roberts resisted arrest, the uncontroverted evidence is that as she was retreating, appellant ran after her and

---

[11] Appellant counters that he did not act in so outrageous and excessively violent a manner as to make him liable in his individual capacity. Where there is a Fourth Amendment violation, there is no requirement under section 1983 jurisprudence (or the common law) that a police officer's conduct must be outrageous and excessively violent before individual liability may be imposed.

grabbed her roughly. Roberts claims that she instinctively jerked her arm away, knocking Nibbs' hat off in the process. The force Nibbs used after this presented a clear issue for the jury. The evidence that appellant grabbed Roberts, slammed her head against the squad car, and clubbed her several times allowed the jury to find that the force he used in arresting her was "excessive" under the circumstances. There thus was ample evidence from which the jury could find that appellant's use of force was "objectively unreasonable."

### 3. *Common Law Claims*

▇▇ Any argument that an action under VITCA against the Government of the Virgin Islands, and against Nibbs in his official capacity, bars any common law tort claims against him in his individual capacity also fails. We reject the suggestion that the VITCA created an exclusive remedy[12] against the Government for the acts of its employees by waiving the governmental entity's immunity and creating an immunity for government employees. Although not bound by it, we adopt the reasoning of the Third Circuit Court of Appeals in Davis v. Knud-Hansen Memorial Hospital, 635 F.2d 179 (3d Cir. 1980).[13]

---

[12] The Federal Employees Liability Reform and Tort Compensation Act (Westfall Act), 28 U.S.C. § 2679, reformed the Federal Tort Claims Act to make an action against the United States government "exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee [of the United States] whose act or omission gave rise to the claim or against the estate of such employee." The VITCA has no similar provision.

[13] Although it is persuasive, we need not be bound by this decision of the Third Circuit Court of Appeals because, among other things, it predates the 1984 amendments to the Revised Organic Act § 23A(b), 48 U.S.C § 1613a, which extended the principles of federalism to the judicial system of this Territory and created the Appellate Division of the District Court as the highest arbiter of all matters of local law. Revised Organic Act § 23A, 48 U.S.C. § 1613a. We have recently articulated our function within the separate, insular judicial system of the Virgin Islands in In the Matter of Barrett, 91CI159A.DX2 (D.V.I. App. Jan. 31, 1995) which discussion is incorporated herein by reference. Suffice it to reiterate here that the standard of deference to be accorded this Appellate Division, our Territorial court of appeals, is that its decisions on matters of local law can be reversed only if there is "manifest error" or the interpretation is "inescapably wrong." De Castro v. Board of Commissioners, 322 U.S. 451, 459 (1994).

With the 1984 amendments in place, it behooves the federal courts consistently to follow the lead of the Congress and allow the insular judicial system of the Virgin Islands the independence and freedom to develop its own precedent, a process the Third Circuit has recently begun in Matter of Alison, 837 F.2d 619, 622 (3d Cir. 1988). In that case, the court held that it lacked appellate jurisdiction over an order of the

The grant of absolute immunity to the Territorial Government by section 2(b) of the Revised Organic Act did not extend to Territorial officials acting in their individual capacities to protect them from suits for tortious performance of their duties. It follows then, contrary to the Territorial Court's holding in this case, that the individual liability of government actors for torts they have allegedly committed is not linked to or dependent upon the liability of the Government.

Thus, construed in every conceivable light, appellant's argument that he is not amenable to suit in his individual capacity fails.

## B. *The Court's 1983 Excessive Force Instruction*

Although appellant made no objection to the trial court's charge immediately after it was read to the jury, Nibbs now contends that the trial judge committed reversible error in instructing the jury that it might find him liable for negligently violating the plaintiff's civil rights. We note first that the record shows that counsel for appellant Nibbs did not submit proposed instructions, was late for the charging conference, and had informed the trial judge that he had read the court's instructions and was satisfied. See App. at 20a-21a.

Failure to object to jury instructions in a timely manner at trial prevents challenging those instructions on appeal … [except]

---

Appellate Division reversing and remanding a "final" judgment of the Territorial Court for further proceedings. This holding was supported by the court's construction of "the scheme of appellate review enacted by Congress" via the 1984 amendments:

The overall congressional intention discernible in [the 1984 amendments] is encouragement of the development of a local Virgin Islands appellate structure with greater autonomy with respect to issues of Virgin Islands law …. The Appellate Division … represents a step in that direction, rather than toward the creation of a territorial federal appellate court with a place and role analogous to the place and role of the courts of appeals in the Article III court structure.

*Id.* at 622. The Appellate Division should thus be viewed as an intermediate Virgin Islands court of appeals whose decisions on matters of local, Territorial law should be upheld unless based on "manifest error" or an interpretation which is "inescapably wrong." See Waialua Agricultural Co. v. Christian, 305 U.S. 91, 109, 83 L. Ed. 60, 59 S. Ct. 21 (1938) ("Territorial courts should declare the law of the territories with the least possible interference…. Unless there is clear departure from ordinary principles, the preference of a federal court [of appeals] as to the correct rule of general or local law should not be imposed upon [the Territory].").

where the reviewing court finds 'plain error' in the instructions, that is, that the alleged error was 'fundamental and highly prejudicial' so 'that failure to consider the error would result in a miscarriage of justice.'

Brandy v. Flamboyant Investment Co., 26 V.I. 384, 388, 772 F. Supp. 1538, 1541, (D.V.I. APP. 1991) (citations omitted). Errors that rise to such rare level are those that 'undermine the fundamental fairness of the trial and contribute to the miscarriage of justice.' United States v. Young, 470 U.S. 1, 16, 84 L. Ed. 2d 1, 105 S. Ct. 1038 (1985). Since appellant did not preserve this issue by appropriate objection, we review the challenged instruction for plain error.

■ Appellant asserts that the correct standard for a finding of liability under section 1983 is "reckless disregard" rather than negligence. We discern no requirement in Graham v. Connor for a finding of "reckless disregard" as a prerequisite for a finding of excessive force. As we read Graham, Roberts had to prove by a preponderance of the evidence that Nibbs employed a greater degree of force to arrest her than that "objectively reasonable" under the circumstances. We reproduce the trial court's instruction in some detail since we find that the judge properly instructed the jury on the section 1983 claim; certainly the court committed no plain error.

In this case, the Plaintiff, Deborah Roberts, claims that she was damaged because of a deprivation, under color of law, of a right which the Constitution of the United States provides to her and which the Federal Law, that is the law of the United States, protects as her civil right.

Specifically, she claims that while the Defendant, Charles Nibbs, was acting [under] color of the authority of the territory as a member of the Virgin Islands Police Department, he subjected her to a violation or a deprivation of her Constitutional right to be free from the excessive use of force against her.

Under the Constitution of the United States, every citizen has the right not to be subjected to unreasonable force by a law enforcement officer. The Federal Civil Rights Statute which we refer to commonly as section 1983, provides that a person may

217

come to court for relief by way of damages against anyone who, under color of any territorial law or custom, subjects this person to the deprivation of any rights, privileges or immunities provided or protected by the Constitution or law of the United States.

In order to prove her claim against the Defendant, the plaintiff must establish by a preponderance of the evidence . . . each of the following elements:

Number one, that the Defendant acted in a way which deprived the plaintiff of her constitutional right by using excessive force against the Plaintiff;

Number two, that the Defendant acted under the color of authority of the territory of the Virgin Islands;

And Number three, that the Defendant's action was the direct cause of the injury which the plaintiff received.

The phrase, "under color of law" refers to action taken by territorial officials which are within the bounds or limits of their lawful authority. The phrase also refers to actions taken by these officials which are outside of or beyond the bounds of their lawful authority. However, in order for unlawful acts done by officials to be done "under color of law," these unlawful acts must be done while the official was claiming or pretending to perform his official duties; that is, the officer's unlawful acts must have been an abuse or misuse of the power which he possessed only because he was an officer. And these unlawful acts must have been committed under such circumstances that the acts would not have occurred unless the person committing them was an officer claiming to exercise his official duty.

App. at 33A-34A.

The trial judge went on to give the following instruction:

The plaintiff also claims that she was subjected to the use of excessive force by the defendant. Every person has the right not to be subjected to unreasonable or excessive force by a police officer, even though the officer is otherwise acting in accordance with the law. An officer may use the force that is necessary under the circumstances. You must determine

whether or not the force used was reasonable or necessary in light of the circumstances based on the evidence presented in this case. In other words, you must determine whether the Defendant acted as a reasonable prudent person acting as a police officer would have done under the circumstances.

In determining whether excessive force has been used by a police officer, you must consider the following factors: Number one, the need for the use of force; Number two, the relationship between this need for force and the amount of force used; Number three, the extent of the harm or injury done to the plaintiff as a result of the force that was used; and Number four, whether this force was used by the police officer in a good faith effort to execute his duty as a police officer.

You must judge the reasonableness of his actions based on the information that the police officer had at the time and based on the circumstances which existed that caused him to respond to that situation.

App. at 35A-36A.

## C. *Government's Liability under VITCA*

Though only raised tangentially, we consider the trial court's dismissal of the claims under VITCA against the officer in his official capacity and the Government on the theory that appellant could not at the same time act "individually" and within the scope of his employment. We find the dismissal of these claims to be plain error by the trial judge.[14]

---

[14]Specifically, the trial court reasoned:

> I don't believe that a person can act both in his individual and in his official capacity. I haven't seen any case-law to that effect because you are either in the course and scope of your employment [or you are not]. *You are either acting within the [scope] of your duties, even if you make a mistake as an official, or you are acting in an excessively violent and outrageous manner, in which case you are not acting as an official; you are acting as individual,* which is exactly why the jury had to determine that last standard, that is whether [Officer Nibbs acted in an] excessive[] and outrageous[] manner.

App. at 13a (emphasis added).

In this appeal, appellant argues, and the above quote from the trial court implies, that dismissal of the claims against the Government (and appellant in his official capacity) was required under Mathurin v. Government of the Virgin Islands, 12 V.I. 23 (D.V.I.

■ We hope there is no longer any confusion between an action against a police officer in his official capacity and an action against him in his individual capacity. As noted above, "the phrase 'acting in their official capacities' is best understood as a reference to the capacity in which the ... officer is sued, not the capacity in which the officer inflicts the alleged injury." Hafer, 112 S. Ct. at 362. Indeed, the trial judge's conclusion on this point loses sight of the fact that the Territorial Government acts only through its agents or officers, and it is for the "individual acts" of such officers within the scope of their employment that the Government assumes liability under VITCA. Further, the officers may also be sued in their individual capacities under section 1983 and the common law for torts committed while carrying out official duties.

■ We find the trial court committed plain error by dismissing the VITCA Claims against the Government and appellant in his official-capacity on the erroneous belief that such claims could not co-exist with the individual-capacity claims against appellant. Since all the procedural requirements for filing a claim under VITCA were met, and since the Government of the Virgin Islands insisted that Nibbs was acting within his scope of employment, the trial judge was required to determine whether Nibbs acted in such a manner that his employer, the Government of the Virgin Islands, would be relieved of respondeat superior liability. Here, the trial court did not make this determination. In light of the concession, indeed the insistence, of the Government at trial that Nibbs was acting within the scope of his employment, we, as a reviewing court, are hardly in a position to make a contrary finding that the nature of the appellant's acts was such that would take him out of the scope of his employment as a police officer.

Accordingly, the case must be remanded and the claims against the Government and against appellant in his official capacity will be reinstated.

1975). We preliminarily note that Mathurin is an opinion of the federal, trial division of this Court, which is not binding on its Appellate Division. In any event, both the trial judge and appellant misconstrue the holding of the case. In enunciating the standard for government liability under the VITCA, the Mathurin court observed that an "individual act" within the scope of employment may subject the Government to liability *in addition to the Territorial employees*, unless the act was so "outrageous and excessively violent as to be outside the scope of employment." *Id.* at 32 (quoting Pierson v. Ray, 386 U.S. 547, 555, 18 L. Ed. 2d 288, 87 S. Ct. 1213 (1967)).

## D. *The Court's "Outrageous" & "Excessively Violent" Instruction*

 The trial court carried this conceptual error into its instructions to the jury when it required a finding that Nibbs' conduct had been outrageous and excessively violent before the jury could find appellant individually liable:

> A police officer acts as an individual and not as an officer if he uses his authority in an outrageous or excessively violent manner. Unless you find that Officer Nibbs acted in an outrageous or excessively violent manner, you may not find him liable in his individual capacity.

App. at 37A. Any error in this instruction was rendered harmless when the jury nevertheless found appellant liable based on this more stringent burden of proof, namely, that his conduct was "outrageous" and "excessively violent." Plainly subsumed in this verdict is the jury's determination that appellant's use of force was "objectively unreasonable." Though the instruction applied an erroneous standard, it did not so undermine the fundamental fairness of the trial as to constitute plain error.

## E. *Sufficiency of Evidence on Damages*

## 1. *Punitive Damages*

 Appellant contends that the evidence at trial was insufficient to sustain the award of punitive damages. In Smith v. Wade, 461 U.S. 30, 75 L. Ed. 2d 632, 103 S. Ct. 1625 (1983), the Supreme Court held that punitive damages are available under section 1983. A finding that the defendant exhibited a "reckless or callous disregard of, or indifference to, the rights or safety of others" is sufficient to support punitive damages awards under section 1983. Id. at 33. As explained in the preceding section, the jury, by its verdict, found that Nibbs' conduct in slamming Roberts' head against the squad car and clubbing her several times constituted outrageous and excessively violent conduct, which undoubtedly exceeded an "indifference" to Roberts' clearly established rights under the Fourth Amendment. We find no basis for disturbing the jury's verdict on punitive damages.

221

## 2. *Nominal Damages*

██ The jury erred, however, in awarding the plaintiff $5,000.00 in nominal damages. We hold that in this jurisdiction, an award for nominal damages cannot exceed one dollar as a matter of law. Brandy, 26 V.I. at 394, n.5; see George v. Christian View, Ltd., 11 V.I. 403, 408 (D.V.I. 1975). The judgment entered by the trial court corrected this error by reducing the jury's verdict on nominal damages to $1.[15]

## F. *Admission of Evidence at Trial*

Appellant contends that the "overall scantiness" of Roberts's case was buttressed by the admission of the adverse verdict against Officer Gilman and the order dismissing the criminal charges against Roberts. Appellant would have us conclude that the award of $5,000 in nominal damages is evidence of the prejudicial effect of these evidentiary items on the jury's verdict. We disagree.

## 1. *Adverse Judgment Against Witness*

Appellant argues that the prior adverse judgment against his fellow officer and, he claims, key witness, Brian Gilman, in another section 1983 action for the use of excessive force, should have been inadmissible because its prejudicial impact far outweighed its probative value. Although the Government objected, again, appellant did not. Appellant here contends that his co-defendant's objection, which was overruled, adequately preserved the issue since a separate objection by him would have been futile.

██ The record shows that the Government made a general objection to the question pertaining to the adverse judgment against the witness, and did not specifically ground its objection on Fed. R. Evid. 403. Rule 403 permits the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice."[16] Appellant was not prohibited from

---

[15] Where the instructions as to nominal, compensatory, and punitive damages are clear and specific, there is no automatic requirement of remittitur or a new trial on the possibility that the jury meant compensatory damages when it awarded nominal damages.

[16] The rules governing the Territorial Court in effect at the time made the Federal Rules of Evidence applicable to trials in that court. Terr. Ct. R. 7.

making this specific objection at the time. Thus, we find that this issue was not preserved for review on this appeal, except for plain error.[17]

Appellant argues that, looking at the entire record developed at trial, his conduct was entirely innocent, and at most, negligent. Again, we cannot agree. The record shows that Nibbs acted to bring about compliance with his "command" with, at best, indifference to Roberts' constitutional rights. Appellant's conduct, in and of itself, was sufficient to justify the jury's verdict. We are not swayed by Nibbs' bald assertion that the admission into evidence of the judgment against Officer Gilman "added undue and unfair weight to Roberts' case." Officer Gilman, as a fact witness and fellow officer on the scene, testified that Nibbs' actions were reasonable. The admission of the evidence of the adverse judgment to impeach Officer Gilman was in the sound discretion of the trial judge, and clearly did not rise to the level of plain error.

## 2. *Order Dismissing Criminal Charges Against Plaintiff*

Nibbs also argues that he was prejudiced unfairly by the admission into evidence of the order dismissing criminal charges against Roberts arising out this incident because it misled the jury to give greater weight to Roberts's civil claims against appellant. Appellant concedes, as he must, that the trial judge gave a limiting instruction that the order does not reflect a decision on the merits. Considering the trial record as a whole, we are convinced that the admission of the order, even if it were error, was harmless. There is strong support in the record for the jury's verdict that appellant used excessive force in effecting the arrest.

Nibbs invites this Court to forge a link between the jury's award of $5,000 in nominal damages and a "high probability" of prejudice flowing from the admission of these two items of evidence. Even if we consider the admission of the verdict and order together, and even if the admission of these items could be thought of as error, it could only have been a non-constitutional "harmless error," that is, "an error or defect in the proceeding which does not affect

---

[17] Had the issue been properly preserved for appeal, we would review the lower court's decision to admit or exclude evidence for abuse of discretion. See Colon v. Government of the Virgin Islands, V.I. BBS 92CR69A.DT1 (D.V.I. APP. May 25, 1994).

substantial rights," and which may be disregarded.[18] See Fed. R. Civ. P. 61.[19] We are of the sure conviction that it is highly probable that the evidence did not unduly influence the jury's finding of liability. Insofar as the appellant appeals the judgment on these admissions, we affirm.

## VI. CONCLUSION

We hold that an official of the Virgin Islands Government, such as appellant, may be sued in his individual capacity under 42 U.S.C. § 1983 when he has acted within the bounds of his lawful authority. Whether such officer has acted in an "outrageous or aggressively violent manner" or with "reckless disregard" is relevant only to the vicarious liability of the Government under the Virgin Islands Tort Claims Act. Accordingly, the trial judge correctly refused to dismiss the individual capacity action against Nibbs. We determine that appellant was entitled to an instruction on the excessive force claim that Roberts had to prove that he used greater force to arrest her than was objectively reasonable. However, the trial judge overstated the legal standard by requiring the jury to find his conduct to have been "outrageous" and "excessively violent." We hold the imposition of this higher burden of proof to be harmless error. On the other hand, we find that the trial court committed plain error in dismissing the VITCA Claims against the Government. We therefore remand with instructions that the VITCA Claims against the Government be reinstated and for further proceedings consistent with this opinion. We affirm the Territorial Court on all the other issues raised in this appeal. An appropriate order will be entered.

## ORDER

AND NOW, this 8th day of February, 1995, after careful review of the record and having considered the submissions and argu-

---

[18] We adopt the standard that a determination of nonconstitutional "harmless error" requires a "high[] probability that the evidence did not contribute to the jury's judgment of conviction." Government of the Virgin Islands v. Toto, 529 F.2d 278, 284 (3d Cir. 1976)

[19] The rules governing the Territorial Court in effect at that time required the practice and procedure of that court to "conform as nearly as may be to that in the district court in like causes." Terr. Ct. R. 7.

ments of the parties; and for the reasons set forth in the Court's accompanying Opinion of even date;

IT IS ORDERED AND ADJUDGED that the judgment of the Territorial Court is AFFIRMED in part, and REVERSED in part. The matter is REMANDED to the Territorial court for findings consistent with this opinion.