Oliver MORTON, Appellant,

v.

Abraham HEWITT and Doreen
Hewitt, Appellees.

No. CIV.A.1999/93–A.

District Court, Virgin Islands,
Appellate Division,
D. St. Croix.

May 13, 2002.

Edward Haskins Jacobs, St. Croix, VI,
for Appellants.

George W. Cannon, Jr., St. Croix, VI, for Appellees.

Before: THOMAS K. MOORE, Judge of the District Court of the Virgin Islands; STANLEY S. BROTMAN, Senior Judge of the U.S. District Court for the District of New Jersey; and ISHMAEL A. MEYERS, Judge of the Territorial Court of the Virgin Islands, Division of St. Thomas, Sitting by Designation.

## OPINION OF THE COURT

PER CURIAM.

Oliver Morton ["Morton" or "appellant"] appeals the Territorial Court ruling that an express contract existed between Morton and Abraham and Doreen Hewitt [collectively "Hewitts" or "appellees"] and awarding the Hewitts damages for Morton's breach of that contract. For the reasons set forth below, we will affirm the Territorial Court's judgment in favor of the Hewitts.

## I. FACTUAL AND PROCEDURAL BACKGROUND

After Hurricane Hugo swept through the Virgin Islands in September of 1989, the Hewitts suffered extensive damage to two of their homes, Estate No. 37 Rattan ["Plot 37"] and Estate No. 22–B Rattan ["Plot 22–B"]. The appellees approached appellant Morton, a licensed repair and maintenance contractor, to give them estimates for the repair of both houses. Morton complied with the Hewitts' request and provided estimates of $80,000 and $75,000 for Plots 37 and 22–B, respectively. The Hewitts then took these estimates to the Small Business Administration ["SBA"] to obtain a loan. Finding the estimates to be

insufficient, the SBA informed the Hewitts that the estimates needed to be typewritten and in a certain format. The Hewitts subsequently informed Morton what the SBA required and provided him with an example of the format. Morton, in turn, had his estimates typed up in accordance with the SBA example. The Hewitts then took these typed documents back to the SBA and received loans with the amounts of $77,600 for Plot 37 and $34,900 for Plot 22–B.[1]

Upon receiving the loans from the SBA, the Hewitts asked Morton to begin work reconstructing Plots 37 and 22–B. Sometime in June of 1990, Morton began work on Plot 37. He later started work on Plot 22–B in October of that same year. Each job was to take 90 days. Various problems arose during these construction periods, including, *inter alia,* the Morton's absences from the work site, the Hewitts' numerous changes to the reconstruction plans, and Morton's unauthorized additions to the structures. As a result of these problems, Morton did not complete his work on Plot 37 until November of 1991 and eventually abandoned his work on Plot 22–B, leaving it 75–85 percent complete.

The Hewitts then brought suit against Morton in the Territorial Court for breach of contract. After a bench trial, the trial judge found that an express contract existed between the parties and that Morton had breached this contract. The trial judge then awarded the Hewitts $14,257.92 in actual damages and $3 in nominal damages to Plot 37 and $34,317.18 in actual damages and $1 in nominal damages to Plot 22–B. Morton now timely appeals the Territorial Court's judgment on the grounds that the trial court erred in (1) concluding that the estimates constituted

---

1. Appellees later requested and received reductions in these loans to $65,000 and $10,000, respectively.

enforceable construction contracts; (2) concluding that appellant breached any construction contract by job delay; (3) assessing actual and nominal damages against the appellant; and (4) rejecting appellant's counterclaim for *quantum meruit* damages.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

 This Court has jurisdiction to review final judgments and orders of the Territorial Court in all civil matters. *See* 4 V.I.C. § 33.[2] Questions involving contract construction—the legal operation of a contract—is a question of law mandating plenary review. *See In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 193 (3d Cir. 2000); *Nibbs v. Roberts*, 31 V.I. 196, 204, 1995 WL 78295 (D.V.I.App.Div.1995) ("The trial court's decision concerning the application of a legal precept is subject to plenary review."). Contract interpretation, on the other hand, is a question of fact, which is reviewed under a clearly erroneous standard. *See In re Cendant Corp.*, 233 F.3d at 193; *Nibbs*, 31 V.I. at 204, 1995 WL 78295.

### B. The Territorial Court Did Not Err in Concluding That An Express Contract Existed

 It is well-settled law that "the test for enforceability of an agreement is whether both parties have manifested an intention to be bound by its terms and whether the terms are sufficiently definite to be specifically enforced." *See ATACS*

*Corp. v. Trans World Communications, Inc.*, 155 F.3d 659, 665 (3d Cir.1998) (citations omitted). Although offer, acceptance, and consideration are required elements of contract formation, "the decisive inquiry in contract formation is the 'manifestation of assent of the parties to the terms of the promise and to the consideration for it . . . .' " *See id.* at 665–66 (quoting 1 Samuel Williston, A Treatise on the Law of Contracts § 23, at 51 (Walter H.E. Jaeger ed., 3d ed.1957)) (alterations in original); *see also Gardiner v. Virgin Islands Water & Power Auth.*, 896 F.Supp. 491, 497 (D.Vi.1995) ("The only essential prerequisite for creation of a valid contract is that the parties mutually assent to the terms and conditions of the agreement."), *aff'd*, 145 F.3d 635 (3d Cir.1998). According to the Restatement (Second) of Contracts,[3] "[m]anifestation of mutual assent to an exchange requires that each party either make a promise or begin or render a performance." Restatement (Second) of Contracts § 18; *see also id.* § 19(1) ("The manifestation of assent may be made wholly or partly by written or spoken words or by other acts or by failure to act."). It is clear from the record below that the parties to this action manifested their mutual assent to be bound by contract.

Morton puts considerable effort into disproving the trial court's determination that the estimate documents for Plots 37 and 22–B constituted express contracts by alleging that he did not sign the purported estimate agreements and that the signature on it was a forgery. The appellant

---

2. *See* Revised Organic Act of 1954 § 23A; 48 U.S.C. § 1613a. The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541–1645 (1995 & Supp.2002), *reprinted in* V.I. Code Ann. 73–177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp.2002) (preceding V.I. Code Ann tit. 1).

3. *See* 1 V.I.C. § 4 ("The rules of the common law, as expressed in the restatements of the law by the American Law Institute . . . shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.").

argues that this lack of signature rendered the contracts unenforceable. The appellant's efforts are misplaced, however, as the trial court correctly noted that Morton's performance of the contemplated work created an enforceable agreement between the parties. (J.A. at 16–17.) According to the Morton's own testimony, the Hewitts asked him to start work reconstructing Plot 37. (*Id.* at 388.) Although Morton did not immediately accept this offer because he was busy with other projects, he stated that he would let them know once he had finished these other projects. (*Id.*) Sometime later, the Hewitts again asked Morton to start work on Plot 37 and even provided him with a check for $10,000 and he thereafter began the work. (*Id.* at 388–94.) While Morton was working on Plot 37, the Hewitts asked him to start work on Plot 22–B as well and Morton did so. (*Id.*) By starting work on Plots 37 and 22–B, Morton effectively accepted the Hewitts' offer. *See* Restatement (Second) of Contracts § 34(2) ("Part performance under an agreement may remove uncertainty and establish that a contract enforceable as a bargain has been formed."); *see also id.* §§ 50–70 (acknowledging that performance constitutes acceptance of an offer). Moreover, these contracts were express because the parties, through their dealings and in the language of the estimates, set forth the nature of the work involved. *Accord id.* § 4 ("A promise may be stated in words either oral or written, or may be inferred wholly or partly from conduct.").[4] Even assuming *arguendo* that the estimates for Plots 37 and 22–B do not, by themselves, constitute express contracts, the totality of the circumstances supports the view that an express contract existed between the parties to reconstruct these homes. Thus, the trial court did not err in finding that the estimates for Plots 37 and 22–B constituted express contracts.

## C. The Language of the Estimates Is Reasonably Certain To Create Enforceable Agreements

The appellant argues that to the extent express contracts exist, they are unenforceable because the terms are insufficient according to section 33(2) of the Restatement (Second) of Contracts "to provide a basis for determining the existence of a breach and for giving an appropriate remedy." Apparently, Morton believes that for the terms of a contract to be "reasonably certain" they must be spelled out in detail. He, however, misconstrues the meaning of section 33(2). "The test is not certainty as to what the parties were to do nor as to the exact amount of damages due to the plaintiff." Restatement (Second) of Contracts § 33 cmt. b. What is required is that a court be able to ascertain whether a breach occurred and what the remedy would be. *See id.* ("Courts decide the disputes before them, not the hypothetical disputes that might have arisen."). Here, the language of the written documents listed the work to be done, the costs associated with the work and the time-frame in which to do the work. Thus, this language was sufficiently certain to allow the trial court to conclude that Morton's delays in completing the work, his unauthorized additions and aban-

---

4. Contracts are often spoken of as express or implied. The distinction involves, however, no difference in legal effect, but lies merely in the mode of manifesting assent. Just as assent may be manifested by words or other conduct, sometimes including silence, so intention to make a promise may be manifested in language or by implication from other circumstances, including course of dealing or usage of trade or course of performance.

Restatement (Second) of Contracts § 4 cmt. a.

donment of work on Plot 22–B constituted breaches warranting appropriate remedies.

### D. The Trial Court Did Not Err in Awarding the Appellees Damages and Rejecting the Appellant's Counterclaim

■ "Appellate courts will not disturb factual findings unless 'the determination [of the trial court] is either (1) completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data.'" *Nibbs*, 31 V.I. at 204, 1995 WL 78295; *see also* 4 V.I.C. § 33 ("Findings of fact shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the territorial court to judge the credibility of the witnesses."). After a bench trial in which it heard the testimony of all the parties and reviewed the evidence, the Territorial Court issued a well-reasoned and articulated decision awarding the Hewitts damages and rejecting Morton's counterclaim for *quantum meruit*.[5] As this Court finds that the evidence provided supports the trial court's decision, we will affirm its ruling.

### III. CONCLUSION

The Territorial Court did not err in concluding that an express, enforceable agreement existed between the parties. Moreover, the terms of the contract were reasonably certain to enable the trial court to determine whether a breach had occurred and the basis for the appropriate remedy. Finally, the trial court committed no clear error in awarding the appellees damages and denying the appellant's counterclaim.

### ORDER

For the reasons set forth in the foregoing Memorandum of even date, it is hereby

**ORDERED** that the Territorial Court's order is **AFFIRMED**.

---

5. Claims arising from quasi-contracts and express contracts are mutually exclusive. If the contract is express, a party cannot claim *quantum meruit. See Christian v. Joseph,* 23 V.I. 193, 200, 1987 WL 10556 (D.V.I.App. 1987) ("[W]here there is uncontradicted evidence of an agreed upon price, a court should not award damages on the basis of quantum meruit.").