## FLORENT DUPIGNY and AMEXPO, INC., Appellants,
## v.
## ISHMAEL ABDUL MUTAAL, Appellee.

D.C. Civ. App. No. 1995-031

Terr. Ct. Civ. No. 727/1991

District Court for the District of the Virgin Islands

Division of St. Thomas and St. John

December 17, 1998, Filed

JUDITH L. BOURNE, ESQ., St. Thomas, VI, *for Appellants*

STYLISH WILLIS, ESQ., St. Thomas, VI, *for Appellee*

THOMAS K. MOORE, Chief Judge, District Court of the Virgin Islands; RAYMOND L. FINCH, District Judge, District Court of the Virgin Islands; and ALFONSO G. ANDREWS, JR., Territorial Court Judge, Division of St. Croix, Sitting by Designation.

### MEMORANDUM

**PER CURIAM**

Amexpo, Inc. appeals the Territorial Court's denial of its motion for judgment as a matter of law, pursuant to Federal Rule of Civil Procedure 50. For the reasons discussed below, the Court will reverse the Territorial Court's ruling and vacate the jury's finding of liability against Amexpo, Inc.

## I. FACTS

Before Amexpo, Inc. ["appellant" or "Amexpo"] hired Florent Dupigny ["Dupigny"] in May of 1990, it required him to fill out an application and provide a police report. When his police report showed he had no prior convictions, Amexpo gave Dupigny two weeks of orientation and training before sending him to one of its gasoline service stations. One of the procedures Amexpo taught Dupigny was that if a customer refused to pay for gasoline or other products, he was to avoid any confrontation, take down the customer's license plate number, and call the police. To help insure compliance, Dupigny was taught that if he followed this procedure, any uncollected money would not be deducted from his pay, whereas other types of shortages would be deducted.

On the day of the incident, Dupigny was the junior employee on duty and no manager or supervisor was present. The manager knew nothing of the incident until he was served with Ishamel Abdul Mutaal's ["appellee" or "Mutaal"] complaint, which he investigated. His investigation showed that after Dupigny pumped gas into Mutaal's car, Mutaal refused to pay for it. Further, according to the police report, Mutaal assaulted Dupigny. Dupigny then gave Mutaal's license number to the police, who later directed Mutaal to pay for the gas.

Mutaal's version of events, which the jury presumably found more credible, differed substantially. Mutaal testified that he requested only five dollars' worth of gas. When Dupigny instead pumped twelve dollars' worth, Mutaal refused to pay the full amount, the two exchanged words, and Dupigny reached in and pulled Mutaal out of the truck by his collar. Mutaal further stated that he was injured severely when Dupigny bit his fingers while they struggled.

Mutaal sued Dupigny in Territorial Court, later adding Amexpo as a defendant. At the conclusion of trial on February 14 and 15, 1994, the jury awarded Mutaal $16,500 in compensatory damages and $10,000 as punitive damages jointly and severally against Dupigny and Amexpo. At the close of all the evidence and after the verdict, the Territorial Court denied Amexpo's motion for judgment as a matter of law and entered judgment in favor of Mutaal

on December 12, 1994. Amexpo timely filed its notice of appeal on January 9, 1995.[1]

## II. DISCUSSION

This Court has jurisdiction to review the judgments and orders of the Territorial Court in all civil cases. V.I. CODE ANN. tit. 4, § 33. The Legislature has adopted as the substantive law of the Virgin Islands the "rules of the common law, as expressed in the restatements of the law approved by the American Law Institute" except to the extent it enacts local statutes which vary those common-law rules. *See* 1 V.I.C. § 4. In exercising its plenary appellate jurisdiction over questions of law,[2] the Appellate Division of the District Court of the Virgin Islands acts as a "court[] of the Virgin Islands" bound to apply the Restatements "in the absence of local laws to the contrary." *Id.* Section 245 of the Restatement (Second) of Agency ["Restatement"] governs the question of Amexpo's liability in this matter:

> A master is subject to liability for the intended tortious harm by a servant to the person or things of another by an act done in connection with the servant's employment, although the act was unauthorized, if the act was not unexpectable in view of the duties of the servant.

Although the trial judge's instructions allowed the jury to hold Amexpo liable if Dupigny's actions were not unexpectable even if it found that Dupigny acted outside the scope of his employment, the judge did not clarify what was considered "unexpectable." The court only mentioned that the jury could examine whether an agent's job was likely to bring him into conflict with others. (Supplemental App. at 43.)

The lack of clarity in the judge's instructions was compounded to the point of reversible error by the failure of the verdict form to require the jury to determine whether Dupigny's conduct

---

[1] Dupigny was defaulted when he never answered Mutaal's complaint and is not an appellant. Mutaal initially named the gas station manager and Texaco as defendants but later dismissed both from the lawsuit.

[2] *See, e.g., Nibbs v. Roberts*, 31 V.I. 196, 204 (D.V.I. App. Div. 1995).

was "expectable," once it found he acted outside the scope of his employment.[3] Rather than inquire whether Dupigny's acts were *expectable*, the jury was asked to determine whether Amexpo should have and failed to exercise control over its employee while he acted outside his employment "to prevent him from intentionally harming plaintiff."[4] Because the trial judge did not adequately instruct the jury on the law governing its determination of Ampexpo's liability to Mutaal, vel non, which carried over into the erroneous interrogatories to the jury, the verdict must be vacated. Because there are no facts upon which the jury could find that Dupigny's actions were expectable, we find that Amexpo cannot be held liable, and will remand the case with direction that the Territorial Court enter judgment for Amexpo.

The comments to section 245 of the Restatement establish Dupigny's conduct was not expectable. Comment a, which addresses the types of situations likely to lead to force states:

> [T]he liability of the principle depends fundamentally upon the likelihood of a battery or other tort in view of

---

[3] The first two interrogatories to the jury found Dupigny liable and determined that he acted outside the scope of his employment (the jury's verdict is indicated in bold):

Question No. 1: Do you find that the Defendant, Florent Dupigny, is at fault in causing the injuries claimed by plaintiff? Answer: **Yes.**

Question No. 2: Do you find that the Defendant, Florent Dupigny, was acting within the scope of his employment with Amexpo, Inc., the owner of the gas station where the March 29, 1991 incident occurred? Answer: **No.**

(Appendix ["App." at E56.)

[4] The faulty jury interrogatories questioned whether Amexpo knew it could control or knew of the need for such control and whether the appellant breached a duty to control Dupigny; again the jury's answers are in bold):

Question No. 3: Do you find that Amexpo, Inc. knew or had reason to know that it had the ability to control Florent Dupigny and knew or should have known of the necessity and opportunity to exercise such control over Dupigny? Answer: **Yes.**
. . .

Question No. 4: Do you find that Amexpo, Inc. breached its duty to exercise reasonable care so to control Florent Dupigny while Dupigny was acting outside of his employment, as to prevent him from intentionally harming plaintiff? Answer: **Yes.**

(App. at E56-57.) The remaining questions addressed the amount of compensatory damages, amount of medical expenses incurred by Mutaal, and the amount of punitive damages. (*Id.* at E57.)

138

the kind of result to be accomplished, the customs of the enterprise and the nature of the persons normally employed for doing the work. Thus, one who is sent to collect a bill does not normally make the employer responsible if he seizes money from the debtor, since this would be an unusual and unexpectable proceeding of a bill collector. On the other hand, one who is sent to recapture property is likely to come into contact with a possessor unwilling to surrender it, and persons sent to recapture goods are frequently of the kind who would be not unlikely to attempt force.

RESTATEMENT § 245 cmt. a. Comment c echoes comment a by nothing that, to create liability for a battery by a servant upon an employer, "the employment must be one which is likely to bring the servant into conflict with others." *Id.* cmt. c. The Restatement clearly differentiates between an attempt to collect on a debt, for use of force is "unexpectable," and an attempt to reclaim property, for which violence and force are "expectable."

■ The illustrations to comment c are confirm this demarcation:

1. A is employed by P to make installment collections, and to report back to P whenever a debtor fails to pay. A, failing to make a collection from T, snatches a pocketbook from T's hand, taking therefrom the correct amount and returning the balance. For this battery, in the absence of further facts, P is **not liable** to T.

2. P directs A to make collections for goods sold by P to T. This direction does not include the retaking of the goods sold, even peaceably. A uses force to recapture chattels previously sold by P to T. In the absence of further facts, P is **not liable** to T for this assault.

(Emphasis added.) In this case, Dupigny was trained and instructed to avoid confrontation in attempting to collect money owed for gas, and to note the customer's license plate number and call the police, with the incentive that he would not be responsible for the uncollected amount if he followed this procedure. Since he

139

was at most to attempt to collect money owed to Amexpo, and not to attempt to reclaim the gasoline which Mutaal had received, Dupigny's use of force to collect on a debt is not "expectable" as under section 245. The facts of this appeal clearly fall within these examples of the employer's non-liability for its employee's actions, and were not an effort to reclaim property, for which the use of force is 'expectable,' as exemplified in the next illustration:

3. P employs A to repossess goods sold by P to T, directing A to use no force whatever but to take the goods voluntarily surrendered. T refuses to surrender the goods and A takes them by means of moderate but unlawful force directed against T's person. **P is subject to liability for the use of such force.**

(Emphasis added.)

## III. CONCLUSION

Although the trial court's oral instructions may have been accurate, the form which the jury used to return its verdict contained inaccurate statements of law. The result is that the Court cannot be confident that the jury actually found Amexpo liable according to a proper interpretation of law. Furthermore, the Court finds as a matter of law that Dupigny's actions were not expectable and thus, Amexpo cannot be held liable. An appropriate order shall issue.

ENTERED this 17th day of December, 1998.