**IN THE MATTER OF THE ESTATE OF HULDA SEWER**
**IN RE ESTATE OF SEWER**
D.C. Civ. App. No. 2003-17

District Court of the Virgin Islands

Division of St. Thomas and St. John

August 23, 2004

*For Appellant*: GARRY E. GARTEN, ESQ., St. Thomas, U.S.V.I.

*For Appellee*: GREGORY H. HODGES, ESQ., St. Thomas, U.S.V.I.

FINCH, *Chief Judge of the District Court of the Virgin Islands*; MOORE, *Judge of the District Court of the Virgin Islands*; and ROSS, *Judge of the Territorial Court of the Virgin Islands, Division of St. Croix, Sitting by Designation*

## MEMORANDUM

(August 23, 2004)

## I. INTRODUCTION

Joan Oat alleges that the trial court improperly set aside its approval of her claim against the estate of Hulda Sewer. Llewellyn T. Sewer, Jr., a derivative heir of the estate, asks the Court to affirm the judgment below. Oat alleges the trial court erred in granting relief under Federal Rule of Civil Procedure 60(b)(6) and in finding that the statute of limitations barred her claim. Because we agree, this Court reverses and remands the matter.

## II. BACKGROUND

### A. The Promissory Note

On March 26, 1987, Hulda Sewer, her husband Victor Sewer and her son Llewellyn A. Sewer leased three parcels of land (3Ae, 3H, and 3I Estate Enighed) in Cruz Bay, St. John to a closely held Virgin Islands corporation called Sewer Enterprises, Ltd. f/k/a Sewer-Dolin Associates,

Ltd. (J.A. 275-294.)[1] Victor and Hulda Sewer signed the lease as landlords. Allan R. Dolin, signed on behalf of the tenant corporation as its corporate secretary. Llewellyn A. Sewer signed the lease twice: once as a landlord and once as the tenant corporation's president. The lease's term was for 50 years with a 50 year renewal ["100 year lease"]. The monthly rental was to be paid to Hulda Sewer, Guest House, Inc. Under the terms of the lease, the tenant corporation could mortgage its leasehold estate to secure construction and end-loan financing. (J.A. at 288.) The lease also set out its priority: "During the term (or renewal term) of this lease, any ... encumbrance of title to the fee estate underlying the leased premises shall be subject and subordinate ... to any leasehold mortgage given by the Tenant ... to any ... other lender." (J.A. at 287.)

On July 1, 1987, Sewer Enterprises, Ltd. signed a $100,000.00 promissory note to Carpeteria, Inc. Employees' Pension Plan for renovation of an apartment building on the land. (J.A. at 799-800.) The note provided for twelve monthly installments of $1,000.00 with the balance to be satisfied by a balloon payment on or before June 30, 1998. Hulda Sewer, Victor Sewer, and Llewellyn A. Sewer signed personal guaranties expressly accepting the note's terms and conditions. (J.A. at 800.) As the lease terms provided, the note was secured by a July 1, 1987 mortgage of the leasehold estate. (J.A. at 801-808.) Hulda Sewer, Victor Sewer, and Llewellyn A. Sewer signed a consent to the execution and delivery of the mortgage. (J.A. 807-808.)

In 1988, Carpeteria's trustee transferred the $100,000.00 promissory note to Don Oat, by a duly recorded assignment. (J.A. at 796-798.) The Oats subsequently became 49% minority shareholders and officers in Sewer Enterprises, Inc. Llewellyn A. Sewer, as president of the corporation, was a 51% majority shareholder.

Don Oat received periodic payments from Sewer Enterprises on the promissory note until November 1991. In January 1994, the corporation's president Llewellyn A. Sewer died. Then, on March 24, 1997, Don Oat died leaving his interest in Sewer Enterprises and in the

---

[1] The lease indicates that Hulda Sewer owned 3Ae outright. (J.A. at 275.) Appellee Sewer, Jr. contends that a surrender of 3Ae was recorded on September 20, 1987 removing it from the lease's coverage. The lease also indicates that of the two remaining parcels, Hulda Sewer jointly owned 3h with Victor, and Llewellyn A. Sewer owned 3i outright. (*Id.*)

promissory note to his wife Joan Oat. On April 24, 1997, Joan Oat brought a foreclosure action against Sewer Enterprises, Ltd. This foreclosure action included a claim against Hulda Sewer. Nearly seven months later on November 13, 1997, the action was stayed when Hulda Sewer died. Two years later, after the will was located, letters of administration were issued to Oswin Sewer in August 1999. (J.A. 810-813.)

## B. Oat's Claim against the Estate of Hulda Sewer

On March 9, 2000, Joan Oat filed a creditor's claim with the estate of Hulda Sewer declaring: "Huldah Sewer personally guaranteed a note for $100,000.00 plus interest; this note was assigned for consideration to Don Oat; this debt to Don Oat is still outstanding; this note and assignment are recorded against real properties owned by Huldah Sewer." (J.A. at 795.) Joan Oat also signed the claim form acknowledging that she had "personal knowledge of the matters alleged in this claim; the amount claimed is justly due; no payments have been made thereon, except as stated; and there is no just counterclaim thereto … ." (*Id.*)

Over the next several months, Oat and Hulda's estate attempted unsuccessfully to settle the debt. (J.A. at 707, 792.) On Oat's motion, the trial court ordered the estate to accept or reject the claim. (J.A. at 789-790.) After no response, Oat moved for the trial court to determine the claim on January 11, 2001. (J.A. at 783.) The court conducted a hearing on February 12, 2001 in which it declined to hear about Oat's pending 1997 foreclosure action but instead urged the administrator to accept or reject Oat's claim against the estate. (J.A. at 768-780.) On March 1, 2001, the administrator's attorney rejected the claim without explanation. (J.A. at 765.) On March 7, Oat moved for the trial court to approve the claim and order payment. (J.A. at 745-64.) In Oat's motion, she represented that the estate must pay the claim because the "estates for the older Sewers were not formed such that they could not be called upon to satisfy the $100,000 loan, either as individuals, as part of the *Sewer family company*, or in as much [sic] as the mortgages encumbered their properties." (J.A. at 746.) (emphasis added). On May 18, 2001, LLP Mortgage, Ltd. filed its own creditor claim against Hulda's estate for a $20,000.00 note secured by Parcel No. 3A of Estate Enighed, Cruz Bay, St. John. (J.A. at 733-44.)

On July 30, 2001, the court conducted another hearing on Oat and LLP's claims. (J.A. at 706-730.) The attorney for Hulda's estate suggested that Sewer Enterprises, Inc. and the administration of the other Sewer estates were relevant to Oat's claim, but the trial court refused to consider such facts at the time. (J.A. at 712.) The trial judge reserved decision until Oat provided certified copies of documents supporting her claim. (J.A. at 722-723.) LLP made no objections to Oat's position or the trial court's rulings. (J.A. at 714-15.) On August 31, Oat filed the requested documents. In this filing, Oat represented to the Court that the claim was secured by a leasehold mortgage on property owned by Hulda's estate. (J.A. at 675, 677.) On September 4, the trial court approved LLP's creditor claim. On September 6, the trial court entered an order formally approving Oat's claim and set a hearing to determine the terms and conditions of payment. (J.A. at 674.)

At this hearing on September 10, the administrator advised the Court of the plan to file an action of accounting against Sewer Enterprises, Ltd. for failure to pay $2,000 monthly rent. (J.A. at 659-660.) He also contended that Oat's claim should be denied because she exerted actual control over Sewer Enterprises, Inc. (J.A. at 666-667.) The trial judge found that the obligations of the note were separate and distinct from these concerns, and ordered that the monies currently in the Sewer Enterprises Ltd. escrow account be used as partial payment of Oat's claim. (J.A. at 667.) The trial court left the balance of Oat's claim "to be resolved in case there's some legitimate reason or offset to this claim." (J.A. at 669.) On September 18, 2001 the trial judge ordered that the partial payment of $78,980.00 be made to Oat from the corporation's escrow account and that Oat file an accounting of her claim and any deposits into this escrow account before the next hearing. (J.A. at 652-54.) Neither the administrator nor LLP sought relief from these decisions.

On November 16, 2001, Oat filed the accounting and confirmed receipt of the $78,980.00. (J.A. at 641-651.) On February 25, 2002, the trial court ordered that, upon the administrator's posting of a $10,000.00 bond, Oat must transfer all funds owed to Hulda's estate that were held by the corporation to the administrator for deposit in the estate's account. (J.A. at 636.)

On March 8, 2002, the trial court ordered the administrator to file accountings for the estate, pay LLP's claim, and take other actions to

further administer the estate. (J.A. at 630-32.)[2] On August 9, 2002, the trial court removed and replaced the administrator Oswin Sewer, finding that he "expended funds owed to the estate to pay personal obligations of the Administrator and others." (J.A. 627-629.)

## C. The Trial Court's Reconsideration of Oat's Claim

On September 5, 2002, counsel from the same firm representing LLP enters an appearance for appellee Llewellyn Sewer, Jr. On that same day, Sewer, Jr. moved to amend the petition for probate to include himself as the child of Hulda Sewer's predeceased son, Llewellyn A. Sewer. (J.A. at 620-21.) Oat alleged that this derivative heir had timely received notice of the petitition for administration but had chosen not to participate. (J.A. at 33-34, 711.) Sewer, Jr. responded that he was improperly excluded from the estate by Oswin Sewer.

On September 23, 2002, Sewer, Jr. moved this Court to reconsider and vacate its approval and partial payment of Oat's claim, arguing that Oat failed to inform the trial court that (1) the Oat family and not decedent Hulda Sewer received the benefit of the promissory note, (2) the note was not secured by any real property owned by decedent Hulda Sewer, and (3) the corporation, as the note's primary obligor, was controlled by Oat and her family. (J.A. at 618.) Sewer, Jr. also argued that Oat's claim was barred by the statute of limitations. (*Id.*) Oat opposed the motion, arguing that there was no legal basis for the Court to reconsider this claim. (J.A. at 579-593.) On November 22, 2002, the trial court conducted another hearing with counsel for the estate, Oat, Sewer, Jr., and LLP present. (J.A. at 515-551.) After hearing Sewer, Jr.'s arguments for reconsideration of the claim and reviewing all the documents, the trial judge stated: "The Court is concerned and believes that it did not have the full story when it went ahead and enforced those payments, and the Court is going to reconsider and revisit the issue." (J.A. at 536.) The judge asked Sewer, Jr.'s counsel if a hearing was necessary. (*Id.*) Counsel responded that if the Court found that the statute of limitations did not bar Oat's claim, then discovery and evidence would be necessary. (J.A. at 537.) Oat's counsel then argued that the statute of limitations did not bar the claim and that the law did not permit reconsideration of this

---

[2] This order was entered on March 8, 2002, but the Clerk of the Court did not issue the notice of entry until April 10, 2002.

claim under Territorial Court Rule 7.4 or Federal Rules of Civil Procedure 59 or 60. (J.A. at 539-540.) Oat's counsel objected to the trial court's reconsideration and characterized it as improperly based on principles of equity. (J.A. at 540.) The trial court again expressed its intention to reconsider Oat's claim because of information it was not aware of at the time it granted the claim. (*Id.*) The trial court concluded the reconsideration issue by stating: "So, I will revisit it, and I'm going to look at the documents that have been filed. And if it can't be resolved on the documents, then I am going to set it for a hearing and listen to it. And whatever is within my jurisdiction, I will deal with it." (J.A. at 540-541.) In concluding, the trial judge expressed the hope to decide the statute of limitations issue before the next hearing, but also instructed the parties to submit any other concerns or arguments in writing. (J.A. at 549.)

On December 5, 2002, Oat complied by filing an informational motion about her initial 1997 foreclosure action against the Sewers and the corporation. (J.A. at 506-514.) Although Oat maintained that this action was unrelated, she cited it as evidence that her claim should not be barred by the statute of limitations, as well as evidence that Sewer, Jr. had, in fact, made misrepresentations to the Court. (*Id.*) At the next hearing on for December 20, 2002, with the same parties present, the judge heard argument on reconsideration of Oat's claim. Sewer Jr. primarily argued that relief was appropriate under the equitable powers of the probate court, because Oat misrepresented her position to the Court. (J.A. at 464-65.) Oat argued that the Court's September 6, 2001 approval of her claim was a final judgment and could not now be challenged under Rule 60. (J.A. at 470.) In response, Sewer, Jr. raised for the *first time* that the catch-all provision of Rule 60(b)(6) may be applicable. (J.A. at 470.) LLP added that the trial court should reconsider Oat's claim under Rule 60, because Oat misled the court to believe her claim was secured and therefore had priority over LLP's claim. (J.A. at 479-80.) Oat advised the Court that if it was to grant relief under 60(b)(6), a separate hearing and clear and convincing objective proof would be required. (J.A. at 482.) Citing equity and Rule 60(b)(6) as its basis, the trial judge set aside its prior order granting Oat's claim, because the Court found that she had "misrepresented" that she had a secured first priority lien against the estate, and that the note was an "arm's length transaction" when, in fact, promisee Oat was managing

266

promisor Sewer Enterprises, Ltd. (J.A. at 493-493.) The trial judge then heard argument on whether the statute of limitations barred Oat's claim, but reserved determination of her claim for a written opinion and order to follow.

In the written opinion and order entered January 17, 2003, the trial court granted Sewer, Jr.'s motion to reconsider and vacate Oat's claim, finding that: (1) Sewer, Jr. had standing to challenge Oat's claim, (2) that 60(b)(6) relief was appropriate because of counsel's deliberate lack of candor about Oat's relationship with the decedent and the corporation, and (3) that Oat's claim against the decedent guarantor was barred by the six-year statute of limitations for contract actions that began to run upon the corporation's default on the note. (J.A. 445-456.) The trial court further ordered that Oat deposit the $78,980.00 with the Clerk of the Court pending further proceedings. (J.A. at 456.)

Oat moved that the Court reconsider this decision on January 31, 2003, arguing that a separate 60(b)(6) hearing was required where the movant would have to establish grounds by clear and convincing evidence. On May 27, 2003, the trial court denied Oat's motion for "Reconsideration and Relief," stating that its January 2003 order was proper because the December 20 hearing satisfied the requirements of Rule 60(b)(6), and, in any event, no further hearing was needed because Oat's on-the-record admission of an undisclosed relationship with decedent and her reliance on a claim junior to LLP's claim qualified as "'objective, clear, and convincing evidence' militating in favor of reconsideration." (J.A. at 27-34.) Oat timely appealed the trial court's rulings of January 17, 2003 and May 27, 2003.

## III. DISCUSSION

### A. Jurisdiction and Standard of Review

This Court has jurisdiction to review final judgments and orders of the Territorial Court in all civil cases. *See* V.I. CODE ANN. tit. 4, § 33; Section 23A of the Revised Organic Act.[3] "Findings of fact shall not be set aside unless clearly erroneous." 4 V.I.C. § 33. The standard of review for this Court in examining the Territorial Court's application of law is

---

[3] Revised Organic Act of 1954, § 23A, 48 U.S.C. § 1614, *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 159-60 (1995) (preceding V.I. CODE ANN. tit. 1).

plenary. *See Nibbs v. Roberts*, 31 V.I. 196, 204, 1995 U.S. Dist. LEXIS 2561 (App. Div. 1995). The trial court's grant of Rule 60(b) relief will not be disturbed on appeal unless it has abused its discretion. 11 WRIGHT AND MILLER, FEDERAL PRACTICE AND PROCEDURE 2857 (2d ed. 1995); *see also McCurry v. Adventist Health System/Sunbelt, Inc.*, 298 F.3d 586, 593 (6th Cir. 2002).

## B. The trial court did not meet the requirements of Rule 60(b)(6) of the Federal Rules of Civil Procedure

██ Oat's primary argument is that the trial judge erred in vacating her claim because the requirements and protections of Rule 60(b)(6) of the Federal Rules of Civil Procedure were not met. We agree. This Court has clearly stated that: "To determine whether extraordinary circumstances exist, a full hearing must be held by the trial court, the parties must be given the opportunity to produce their witnesses, and the Territorial Court must render findings of fact and conclusions of law." *A.P. v. Gov't of the Virgin Islands ex rel. C.C.*, 961 F. Supp. 122, 125, 36 V.I. 158 (App. Div. 1997) (citing *FDIC v. Alker*, 234 F.2d 113, 117 (3d Cir. 1956). In its May 27, 2003 denial of Oat's motion for reconsideration and relief, the trial court found that:

> The December 20 Hearing, however, was such a hearing. Both parties were permitted to bring forth witnesses if they chose. Although there was some discussion of grounds for relief under Rule 60(b)(1) - (3), the tenor of the hearing clearly settled on Rule 60(b)(6) as the only available avenue of relief. Furthermore, Oat never objected to the hearing or suggested, even when the Court's inclination to grant reconsideration became clear, that she had any witnesses or evidence to rebut the evidence in the record. Oat cannot now claim that she was deprived of her right to be heard when she never asserted that her right was somehow abridged.

(J.A. at 31-32.) Unfortunately, the trial court cannot retroactively convert its December 20, 2002 status hearing to a full 60(b)(6) hearing. First, Oat did not have sufficient notice that *evidence* would be taken at this routine hearing regarding the administration of the estate.[4] Simply reciting after

---

[4] Although the trial court expressed its inclination to revisit the claim at the prior hearing on November 22, it made no mention of Rule 60(b)(6) and gave no indication

the fact that the trial judge would have permitted Oat to present witnesses does not remedy this defect. As Oat points out, the initial scope of this meeting merely was to hear further argument on the legal basis for the trial court to revisit Oat's claim. (J.A. at 462). Furthermore, at a proper Rule 60(b)(6) hearing, evidence to justify relief under the first three subdivisions of Rule 60(b) may not be considered. *See A.P. v. Gov't of the Virgin Islands ex. rel. C.C.*, 961 F. Supp. 122, 125, 36 V.I. 158 (App. Div. 1997). The trial judge conceded that there was "some discussion" of relief under Rule 60(b)(1)-(3) before the "tenor" settled on Rule 60(b)(6). Lastly, the trial court's reliance on Oat's failure to object at the December 20 hearing is also misplaced, as Oat indeed informed the court that if Rule 60(b)(6) relief were to be granted, a separate evidentiary hearing would be required. (J.A. at 482).[5]

The trial court also ruled that no hearing was necessary because Oat's counsel had freely conceded the facts supporting the court's basis for relief. (J.A. at 33.) Such a concession simply is not found in the record before us. On the contrary, Oat's counsel denied breaching his duty of candor to the court, denied making any misrepresentations, and never conceded that Oat's leasehold mortgage was unsecured.

Lastly, the trial court attempted to dispense with the requirement of a full evidentiary hearing based on local law and its equitable powers:

> [T]his Court presides over this matter, not in its civil capacity alone, but in its equitable capacity as well. Thus, mindful of the applicable rules of civil procedure that a court must follow in order to guarantee due process, this Court has an obligation to ensure that substantial justice is done to the parties ...
>
> ...
>
> As the Court sees it, it has an equitable duty "to administer justice in all matters relating to the affairs of decedents" and ["]to make a full, equitable, and complete disposition of the matter" as justice requires. 15 V.I.C. § 161. Territorial Court Rules provide that the Rule of Civil Procedure must be implemented to assist the Court in carrying out its duties under the Territory's probate statute. *See*

---

that the December 20 hearing would be the full evidentiary hearing required under that Rule.

[5] Even the appellee Sewer, Jr. informed the judge at the November 22 hearing, that further "discovery and evidence" would be necessary to revisit Oat's claim. (J.A. at 537.)

TERR. CT. R. 190 ... It is incumbent on this Court, therefore, to balance the competing requirements of the Rules of Civil Procedure and the Territory's probate statute in crafting an appropriate response to errors that come to light later than would be desirable.

(J.A. at 18.) (Citations omitted). We disagree and hold that Rule 60(b) fully applies to protect the finality of judgments in local probate matters.

The trial judge erred in construing 15 V.I.C. § 161 as granting the probate court the power and jurisdiction to circumvent Rule 60(b). Relying on Territorial Court Rule 190, the judge also argued that the Federal Rules of Civil Procedure may only be implemented to assist it in probate matters. The trial court would turn Rule 190 on its head. Rule 190 provides that in probate proceedings

> [T]he Federal Rules of Civil Procedure apply so far as practicable and to the extent that matters of procedure are not specifically provided for by law or these rules. The rules under this part apply to such proceedings, *supplementing* the Federal Rules of Civil Procedure and are to be *construed in harmony therewith.*

Contrary to the trial court's reasoning, Rule 60(b)'s procedure is not to be implemented only to the extent that it assists in probate matters, but instead to the extent that it is practicable when the local rules and law do not already specifically provide another procedure. The trial court does not explain why following Rule 60(b) would generally be impracticable in probate proceedings. Furthermore, 15 V.I.C. § 161 does not specifically provide another procedure, but merely outlines the court's jurisdiction and power. We agree with Oat that the trial court's broad construction of local law as trumping Federal Rule 60 would create the "standardless residual of discretionary power to set aside judgments" that the Court of Appeals has expressly sought to avoid. *Martinez-McBean v. Gov't of the Virgin Islands,* 562 F.2d 908, 911, 14 V.I. 79 (3d Cir. 1977) (holding that Rule 60(b) does not confer such a broad power). Therefore, we will remand this matter with the instruction that the trial court conduct a full evidentiary hearing under Rule 60(b)(6) of the Federal Rules of Civil Procedure.[6]

---

[6] The trial court cited counsel's deliberate lack of candor about Oat's relationship with the decedent and the corporation as one basis for relief under Rule 60(b)(6). On remand, we caution the trial court that to the extent a basis for relief fits within one of the five specific enumerated categories in Rule 60(b), but is otherwise time barred, Rule 60(b)(6)

270

## C. No Statute of Limitations bars Oat's claim

Ms. Oat alleges that the trial court erred in barring her claim because any such defense of statute of limitations was waived.[7] In support, Oat cites the fact that in her March 7, 2001 motion to approve the claim, she states that this action was within the statute of limitations. (J.A. at 747.) Oat then points out that not the administrator, LLP nor the trial judge ever raised this defense before her claim was approved on September 4, 2001 or ordered partially paid on September 18, 2001. In response, Sewer Jr. argues that he was wrongfully excluded from participating in the administration of the estate, and that as soon as he was authorized to intervene, he promptly raised the statute of limitations defense. We agree with Oat that the statute of limitations defense was waived.

Rule 8(c) of the Federal Rules of Civil Procedure establishes the bar of the statute of limitations as an affirmative defense. "Parties are generally required to assert affirmative defenses early in litigation, so they may be ruled upon, prejudice may be avoided, and judicial resources may be conserved." *Robinson v. Johnson*, 313 F.3d 128, 134 (3d Cir. 2002). As already noted, Territorial Court Rule 190 provides that Federal Rule 8(c)'s designation of a statute of limitations defense as a waivable affirmative defense must be abrogated by a specific provision of Virgin Islands law or another Territorial Court Rule. There are no local rules that specifically provide otherwise and we find that our local statutory law also does not do so.

Upon review, we hold that our local probate laws also do not abrogate Federal Rule of Civil Procedure 8(c), although 15 V.I.C. §§ 392, 395 do specifically mention that claims against an estate can be barred by the statute of limitations. Section 392 states that "[u]ntil the administration has been completed, a claim against the estate not barred by the statute of limitations may be presented, allowed, and paid ...." Section 395 states that "[n]o claim shall be allowed by the executor or

---

relief cannot be given. *See Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 n.11, 100 L. Ed. 2d 855, 108 S. Ct. 2194 (1988). Therefore, if Oat's lack of candor fits under Rule 60(b)(3), the motion for relief from that judgment must be made within one year. FED. R. CIV. P. 60(b).

[7] As stated, the trial court found the six-year limitations period for actions on contract applicable to this case. Oat argues, in the alternative, that the twenty-year limitations period for real property should apply. Because we agree with Oat that the statute of limitations defense has been waived, we need not address this claim.

administrator or the district court which is barred by the statute of limitations." We do not interpret these provisions to mean that the statute of limitations defense cannot be waived on a claim against an estate.

The legislative derivation of these two probate provisions supports this conclusion. First, sections 392 and 395 are taken verbatim from the Virgin Islands' codes of 1921. In 1921, courts still recognized a distinction between actions in equity and actions at law. Indeed, the 1921 code specifically provided for the consolidation of law and equity actions under the new designation "civil actions." 1921 Codes, Title III, ch. 1, § 1. It was natural, then that the 1921 predecessors to sections 392 and 395 specifically mentioned the statute of limitations as applying to probate matters because the statute of limitations sounded in law while probate sounded in equity. See 1921 Codes, Title III, ch. 75, §§ 2, 4. Second, the Virgin Islands Legislature clearly contemplated the application of Federal Rule 8(c) to all local civil actions. In 1921, an objection could only be taken by answer or demurrer. 1921 Codes, Title III, ch. 2, § 1. When the Legislature incorporated the statute of limitations of actions from the 1921 Codes into 5 V.I.C. § 31, it did not refer to the mechanism for raising the defense explaining that it was already covered by Rule 8(c) 's designation of such an objection as an affirmative defense. See V.I. CODE ANN. tit. 5, § 31, History at 113 (1997). Nothing suggests that the Legislature intended to exclude claims in a probate proceeding against an estate from the application of Rule 8(c).

■ The administrator of the Hulda's estate failed to raise the affirmative defense that Oat's claim was time-barred after she filed it on March 9, 2000 or before the trial court initially approved it on September 4, 2001. During that time the trial court held two hearings on Oat's claim. From May 18 to September 4, the other claimant, LLP, also failed to raise this affirmative defense, even on the dubious assumption that it had standing to do so. The trial court's September 6 Order granting Oat's claim thereby extinguished the statute of limitations defense. Although Sewer, Jr. raised the affirmative defense in his September 23, 2002 motion for reconsideration of Oat's claim, it had already been waived by the inaction of the administrator and the probate court's approval of the claim. The trial court's *post hoc* reliance on the limitations defense two years after the claim was paid clearly prejudiced Joan Oat. Since we find Oat's claim is not barred by any statute of limitations, we will remand

the matter to the trial court to redetermine the validity of Joan Oat's claim.

## IV. CONCLUSION

The trial court's January 17 and May 27, 2003 rulings will be reversed and remanded because the statute of limitations regarding Oat's claim is an affirmative defense that has been waived and because a full evidentiary hearing is required under Rule 60(b)(6).